**FIDELITY EQUIPMENT LEASING CORPORATION and Subsidiaries and Global Industries, Inc. and Subsidiaries, Plaintiffs,**

v.

**UNITED STATES of America and John W. Henderson, As District Director of the Internal Revenue Service, Defendants,**

**Intervenor Georgia Ann Harmon, as trustee of an inter vivos and an alimony trust created by Michael G. Thevis.**

**Civ. A. No. C78–1811A.**

United States District Court, N. D. Georgia, Rome Division.

Dec. 20, 1978.

Edward T. M. Garland, John R. Martin, and Robert W. Hassett of Garland, Nuckolls, Kadish & Cook, David F. Rock, Atlanta, Ga., for plaintiffs.

William W. Taylor, III of Zuckerman, Spaeder & Taylor, Washington, D.C., for intervenor.

William L. Harper, U. S. Atty., Atlanta, Ga., Richard F. Mitchell, Tax Div., Dept. of Justice, Washington, D.C., for defendants.

## NATURE OF THE PROCEEDINGS

HAROLD L. MURPHY, District Judge.

On October 23, 1978, the plaintiffs filed a complaint to determine the reasonableness and appropriateness of two jeopardy assessments for income tax levied against them by the Internal Revenue Service on August 9, 1978. Jurisdiction of the Court was invoked pursuant to 26 U.S.C. § 7429(b).

These jeopardy assessments were made by the District Director of the Internal Revenue Service pursuant to Section 6861 of the Internal Revenue Code, 26 U.S.C. § 6861, which states in part:

> If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof.

26 U.S.C. § 6861(a). By letter dated August 11, 1978, defendants were notified of the bases and amounts of the assessments as well as their rights in regard to an appeal.

The parties have engaged in discovery including interrogatories, requests to produce documents and the taking of depositions. Hearings on the complaint and pending motions were held before this Court on November 15, 1978, and December 4, 1978. At these hearings the Court heard testimony and accepted exhibits pertaining to the issues presented.

The plaintiffs seek to have the jeopardy assessment abated on a variety of grounds. Initially the plaintiffs contend that the notice given by the Government was insufficient because it did not state, "the information upon which the Secretary [relied] in making such assessment." 26 U.S.C. § 7429(a)(1). The plaintiffs also contend that the administrative review provided for by 26 U.S.C. § 7429(a)(3) was a sham. As a result of these failures, the plaintiffs con-

tend that the jeopardy assessment must be abated as void and illegal.

The complaint asserts that the jeopardy assessment proceeding is inappropriate because the collection of tax will not be jeopardized by delay. Further, the computation of tax liability is questionable because of the extrapolations relied on by the Government when more accurate methods to determine income were available.

Finally the plaintiffs argue that the jeopardy tax proceedings are unconstitutional as violative of the due process provision of the Fifth Amendment. Even if the proceedings are constitutional in the abstract they are not as applied to the plaintiffs. The collection procedures, the plaintiffs maintain, are being used to destroy the businesses of the plaintiffs rather than collect taxes.

The defendants have responded to each of the plaintiffs' contentions. Both parties have submitted memoranda in support of their arguments. In addition, Georgia Ann Harmon, as trustee of an inter vivos and an alimony trust created by Michael G. Thevis, has been allowed full participation in the proceedings as an intervenor. The intervenor has also submitted a memorandum on the issues facing the Court.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Section 7429(a)(1) of the Internal Revenue Code requires that within 5 days after an assessment is made pursuant to 26 U.S.C. § 6861(a), "the Secretary shall provide the taxpayer with a written statement of the information upon which the Secretary relies in making such assessment." 26 U.S.C. § 7429(a)(1). Apparently attempting to comply with this notice requirement the defendant included the following paragraph in the letters of August 11, 1978, notifying the plaintiffs of the jeopardy assessment:

Under section 6861 of the Internal Revenue Code, you are notified that I have found you to be designing quickly to place your property beyond the reach of the Government either by removing it from the United States, by concealing it, by transferring it to other persons, or by dissipating it, thereby tending to prejudice or render ineffectual collection of income tax for the taxable years ended as shown below. Accordingly, based on information available at this time, I have approved assessment of tax and additional amounts determined to be due as reflected in the attached computations:

The plaintiff correctly argues that such conclusionary statements do not fulfill the requirements of the statute. The Government should have informed the plaintiff of the information which led to these conclusions, rather than merely the conclusions.

However, the Government's failure to satisfy the notice requirement of section 7429 will not serve to invalidate these proceedings. The legislative history of this section indicates that both the notice and administrative review requirements were included simply to facilitate the subsequent Court proceedings. Senate Finance Committee Report, S.Rep.No.94–938 (part II), 94th Cong., 2d Sess., 365–366 (1976). U.S. Code Cong. & Admin.News 1976, p. 2897. Through the process of discovery the taxpayers have been informed of the information relied upon by the Government. Any deficiency in the notice issued by the Government is now immaterial. The plaintiffs were not prejudiced by the lack of information contained in the notification letters.

2. The plaintiffs contend that this proceeding should be declared illegal and void because of inadequate administrative review. The only deficiency raised by the plaintiffs is again the Government's failure to supply adequate information. Without determining the adequacy of the administrative review, the Court holds that any possible inadequacy has been corrected through full use of the discovery process and the *de novo* review of plaintiffs' claims provided by this Court.

3. In order to support its determination of a jeopardy assessment the Government must show that the assessment is "reasonable under the circumstances

. . . ." 26 U.S.C. § 7429(b)(2). The burden of proof in such a showing rests upon the Government. 26 U.S.C. § 7429(g)(1). In determining the reasonableness of the assessment, this Court is not limited to information available to the IRS at the time of the assessment, but may also consider relevant information gathered after that date. *Loretto v. United States,* 440 F.Supp. 1168 (E.D.Pa.1977); *Haskin v. United States,* 444 F.Supp. 299 (C.D.Cal.1977).

■ In determining "reasonableness" the Court is given little guidance by the statute. A jeopardy assessment may be levied by the IRS if it believes that the collection of a deficiency will be "jeopardized by delay". 26 U.S.C. § 6861(a). The Internal Revenue Manual suggests that a jeopardy assessment should not be made unless one of the following three conditions is met:

(1) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself;

(2) The taxpayer is or appears to be designing quickly to place his property beyond the reach of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it; or

(3) The taxpayer's financial solvency appears to be imperiled.

The legislative history of section 7429 indicates Congressional approval of the standards set forth in the IRS manual. See, Senate Finance Committee, S.Rep.No.94–938 (part II), 94th Cong., 2d Sess., 360 n. 1 (1976). The Court agrees that a finding of any one of the three conditions listed would support the Government's determination. However, the Court's consideration is in no way limited to the factors delineated in the IRS manual.

■ At the November 15, 1978 hearing, Robert L. Ison, Jr., a real estate salesman for Ackerman and Co., was called to testify. Mr. Ison testified that during the early part of 1978 he was contacted concerning the possible sale of Global Industries property located in Atlanta, Houston and New Orleans. Included in the listing of saleable properties were the properties located at 267 and 270 Marietta Street in Atlanta, Georgia. The property at 267 Marietta Street alone was valued at between 1.5 and 3 million dollars. In addition, Mr. Harvey Harkness, an Assistant United States Attorney, testified that he was contacted by a representative of the plaintiffs concerning a sale of the Marietta Street properties. While no actual sale was executed, this testimony provides support for the Government's contention that the plaintiffs were attempting to sell substantial amounts of valuable property. The fact that these properties are presently under control of this Court in a criminal action, *United States of America v. Michael G. Thevis, et al.,* Civil Action No. 78–180A, is no defense to a jeopardy proceeding. See *Loretto v. United States,* 440 F.Supp. 1168 (E.D.Pa. 1977). Plaintiffs' attempt to liquidate substantial portions of its real estate holdings lends support to the Government's contention concerning the dissipation of corporate assets.

■ Further support for the Government's position is evidence of the alleged "skimming operations" engaged in by the plaintiffs. Mr. Ralph B. Pearce, formerly an agent of the IRS involved in investigating the plaintiffs, defined a "skimming operation" as the non-reporting of income from whatever source derived. Mr. Pearce testified that his examination of the books and accounts of the plaintiff indicated a "skimming operation" was going on during the fiscal years ending on November 30, 1972, 1973, 1974 and 1975. Although most of Mr. Pearce's testimony related to findings drawn from projected, rather than actual income, he was able to supply at least one example of skimming through documentary evidence. By comparing the cash register receipts of the Paris Theater of Athens, Georgia with the income reported on the books of the plaintiffs, Mr. Pearce was able to state that proceeds from the theater sent to Atlanta (plaintiffs' center of operations) in cash were not reported on the corporate books as income. The only amount reported on the books of the corpo-

ration was the amount deposited in a checking account in an Athens, Georgia bank.

Although the evidence of skimming received from IRS agents related to a period ending with November 30, 1975, there is substantial evidence to support the Government's claim that the "skimming operation" is continuing. Testimony elicited from Federal Bureau of Investigation Agent Paul King indicated that FBI agents witnessed the execution of a search warrant at 267 Marietta Street on November 7, 1978. These agents reported that there were large amounts of cash on hand in the warehouse at that date. Further, Agent King stated that on several occasions he had witnessed George Thevis leaving the Marietta Street property with paper bags of the same color and size as those used by Michael G. Thevis to transport cash during his status as a fugitive. This evidence substantiates the Government's assertion that skimming operations are presently being conducted by the plaintiffs.

■ Finally, there is also support in the record for the Government's claim that the potential insolvency of the plaintiffs could jeopardize the collection of taxes. The three most recently filed corporate income tax returns before the Court reflect corporate financial losses of some $10 million. There are very large outstanding liabilities in the form of promissory notes executed by Fidelity Equipment Leasing Co. to Michael G. Thevis at the time of the transfer of Global Industries, Inc. The plaintiffs offered no evidence of their solvency nor did they dispute the Government's claim that their liabilities exceed their assets by millions of dollars.

The factors outlined above support the Government's decision to seek a jeopardy assessment. The apparent attempt to sell substantial amounts of real property, the evidence of past skimming of income and the likelihood of its continuation, and the significant evidence of plaintiffs' insolvency make the assessment rendered pursuant to 26 U.S.C. § 6861, reasonable under the circumstances.

■ 4. Plaintiffs contend that the jeopardy assessment is illegal because it is not being used to collect revenue, but rather as a vehicle to destroy the businesses of the plaintiffs. Plaintiffs have shown no evidence of an illegal purpose on the Government's part. The Court has found that the assessments were reasonable under the circumstances. Although the plaintiffs contend these assessments are not the most effective way to collect the alleged deficiencies, they put on no evidence to show that their income is now being properly documented and recorded. It was reasonable for the Government to decide that the only way to *insure* the collection of revenue deficiencies was to levy the jeopardy assessments.

■ 5. The plaintiffs argue that the statutory scheme enacted in 26 U.S.C. §§ 6861 and 7429 is unconstitutional because it does not provide for adequate postseizure review as required by the Fifth Amendment to the Constitution. The Court does not agree. The statutory scheme provides a taxpayer with notice of the governmental action. The judicial review afforded allows the taxpayer to examine witnesses, present evidence and receive a *de novo* review from an uninterested impartial party.

The jeopardy assessment procedures can be used only in circumstances which indicate that the collection of taxes would be adversely affected by the delay inherent in normal deficiency collection procedures. The collection of tax is of the very highest priority to any government. The importance of revenue collection justifies the extraordinary procedures Congress has provided for in sections 6861 and 7429 of the Internal Revenue Code. The statutory procedures available in the case of a jeopardy assessment are constitutionally valid. *Haskin v. United States,* 444 F.Supp. 299 (C.D. Cal.1977).

6. The final question to be passed on by the Court concerns the propriety of the amount of the assessment. 26 U.S.C. § 7429(b)(2)(B). The taxpayer bears the burden of proving that the amount assessed is not appropriate. 26 U.S.C. § 7429(g)(2).

The assessment against Fidelity Equipment Leasing Corporation and its subsidiaries for the taxable year ending November 30, 1975, equaled $1,207,405.12. The assessment against Global Industries, Inc. and its subsidiaries equaled:

$402,808.17 for the taxable year ending November 30, 1971;

$2,954,397.53 for the taxable year ending November 30, 1972;

$3,284,533.85 for the taxable year ending November 30, 1973, and

$4,076,813.52 for the taxable year ending November 30, 1974.

The total amount assessed against Global equaled $10,718,553.07. The amounts assessed against the plaintiffs included substantial penalties levied pursuant to 26 U.S.C. § 6653(b) and interest.

■■■ While it is unable to specify any incorrect determination by the Government, the Court cannot hold that the amount assessed is appropriate under the circumstances. The Internal Revenue Service, in determining the assessed deficiencies, relied on findings that this Court, with the evidence now before it, cannot uphold nor deny. For example, while the Court has before it copies of the sales agreement and promissory notes executed between Fidelity and Michael G. Thevis, the Internal Revenue Service determined that the transaction was a sham and disallowed deductions for interest paid on the notes. Further, a substantial portion of the assessment constituted addition to the tax, under 26 U.S.C. § 6653(b), as a result of the Government's decision that the underpayment resulted from fraud. This Court is not able to presently make such a finding. While the IRS apparently used the best available means of determining the deficiency, the unreliability of its methods combined with the Government's other holdings, compels this Court to deny the Government's request for a finding that the amount of liability assessed was appropriate.

Pursuant to 26 U.S.C. § 7429(b)(3), when the Court finds that the amount assessed is inappropriate, authority is granted to take such action, "as the court finds appropriate." Accordingly, the Court will fashion a remedy which protects the Government's ability to collect its revenue, allows an accurate determination of the plaintiffs' deficiency and does not subject the plaintiffs to irreparable injury. The Court orders the following:

1. The liens imposed by the IRS as a result of their jeopardy assessment will be allowed to stay in effect, however the enforcement of those liens by seizure or sale is stayed until such time as the actual deficiencies owed by the plaintiffs may be determined by the Tax Court.

2. The plaintiffs are ordered to immediately retain the services of a reputable accounting firm (the choice will be subject to this Court's approval). This firm will be retained in order to establish an acceptable method of business procedures for the accounting and bookkeeping obligations of the plaintiffs. The large daily flow of cash now a part of plaintiffs' operation must be stopped. All of plaintiffs' dealings must be by check, draft, or other documentary means. Each of plaintiffs' subsidiaries must strictly maintain accurate records of all sales, purchases, or other transactions. All "peep shows" or theaters must maintain accurate meter or ticket readings, which are to be recorded and stored. Any operation which is not susceptible to some reliable method of record keeping will be halted immediately. All procedures for documenting income and expenses must have the approval of the retained accounting firm.

Upon completion of procedures to assure accurate bookkeeping and accounting procedures for plaintiffs, the accounting firm instituting such procedures shall file a report with this Court as to the methods and procedures utilized to assure accuracy of the plaintiffs' records, and complete reporting as to all income and expenses, with a copy of such report being furnished to the Internal Revenue Service.

All of this action shall be taken at plaintiffs' expense and plaintiffs must commence implementing this order immediately.

Additionally, Agents of the Internal Revenue Service shall be allowed continuing

reasonable access to the current books and records of plaintiffs to assure compliance with this order and to determine if plaintiffs are maintaining correct records of all income and expenses and are otherwise complying with this order.

In order to facilitate any future interpretations of this order, the Court notes that the collection of revenue by the Government is the primary purpose of this order. If at any time the plaintiffs jeopardize that purpose through skimming, dissipation of assets, inadequate or inaccurate record keeping, the Government may seek an immediate lifting of the stay and execution of their liens. The Court retains jurisdiction of the present action in order to insure compliance with these instructions and for such other action as may hereafter be appropriate.

SO ORDERED, this the 20th day of December, 1978.