## Michael Bradley KRIVACEK and Harold Goldstein, Plaintiffs,

v.

## UNITED STATES of America, Defendant.

### No. CV 80–5628–AWT.

United States District Court,
C. D. California.

Feb. 12, 1981.

M. Sean McMillan, Loo, Merideth & McMillan, Los Angeles, Cal., for plaintiffs.

Andrea Sheridan Ordin, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax Division, Kenneth M. Barrish, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM AND ORDER

TASHIMA, District Judge.

This is a summary proceeding pursuant to § 7429(b) of the Internal Revenue Code, 26 U.S.C. § 7429(b) (all subsequent statutory references are to the Internal Revenue Code of 1954, as amended) to review termination assessments, § 6851, against plaintiff-taxpayers. After an accelerated discovery program permitting depositions to be taken on shortened notice, this matter was heard on January 5, 1981. At the conclusion of the trial, which was on the twentieth day after this action was commenced, § 7429(b)(2), the Court orally announced its determination of the issues involved. On the following day, the Court signed and filed its Final Order herein.[1]

The government has now filed a timely motion under Rule 59(e), Fed.R.Civ.P., to alter, amend or vacate a portion of the Final Order, to require the posting of security or, in the alternative, to stay a portion of the Final Order pending appeal.[2]

At the conclusion of the trial, as set forth in the Final Order, the Court determined that the making of the termination assessments was reasonable under the circumstances, but that the amounts assessed were inappropriate under the circumstances. Neither of these determinations is challenged by this motion and, therefore, the

---

1. A copy of said order, entered on January 7, 1981, is appended hereto. Because the Court's determination is not subject to appellate review; § 7429(f), the Court concluded that Rule 52, Fed.R.Civ.P., the purpose of which is to facilitate such review, did not apply; therefore, no findings of fact were made.

2. Although the statute requires an expedited determination by the district court and precludes an appeal, nothing therein suggests that Rule 59(e) is inapplicable. It is, therefore, concluded that the Court has jurisdiction to entertain the instant motion.

reasons therefor need not be set forth.[3] The Final Order then provides, pursuant to § 7429(b)(3) which authorizes the Court to order the Secretary of the Treasury (the "Secretary") "to take such other action as the court finds appropriate," that "the Secretary shall, in enforcing or collecting the termination assessment with respect to any amount in excess of $30,370.00 ... levy only against the securities out of which the termination assessment arose."

The government contends that this last quoted portion of the Final Order is, in effect, an injunction against the collection of taxes and, as such, exceeds the jurisdiction of the Court under § 7429 [4] and, in any event, is an abuse of discretion.

■ The termination assessments were made in this case, and justifiably so, because the taxpayers were engaged in an illegal enterprise and because there was evidence that the taxpayers were designing to depart the United States and to remove funds from the United States. The taxpayers here were engaged in an unauthorized and unlicensed banking enterprise, purporting to act as an offshore bank. They were arrested by the Los Angeles County District Attorney for violation of state law.

At the time of their arrest, listed securities valued at $1,304,044 [5] were seized from them. The securities were found in plaintiff Goldstein's briefcase which, in turn, was found in plaintiff Krivacek's automobile. Plaintiffs claimed that the securities had been delivered to them as collateral for a loan to be made by their "bank" and that when they learned the securities were stolen, on advice of counsel, they were in the process of returning them. It is undisputed that stop transfer instructions had been placed against these securities (which were all in "street" names). The Revenue Agent testified that he did not know that stop transfer instructions had been placed and that if he had known so, he would not have included the value of the securities as income.

The government, relying on the well-established principle that stolen property, like any other illegal income, is includable in gross income, included the stolen securities at full value, attributed one-half to each taxpayer, as specific items of income in making the termination assessments.

At the conclusion of the trial, the Court perceived two problems with the government's theory. First, there was no evidence that plaintiffs were in possession of the stolen securities in any capacity other than as pledgees or that their interest was other than a security interest. Second, no evidence was introduced on the value of stolen, listed securities, standing in street names, against which stop transfer instructions had been placed. Undoubtedly, there is a fair market value for such securities, but there is no reason to believe that such value approximates "full value." Under these circumstances, it was the Court's conclusion that the portion of the assessments attributable to the stolen securities would be

---

**3.** It should be noted that one reason for reducing the amount of the assessments against each taxpayer on the ground of "inappropriateness" was because the government attempted to change the basis by which the amount assessed was determined. As required by § 7429(g)(2) that, "the Secretary shall provide a written statement which contains any information with respect to which his determination of the amount assessed was based," the Service provided each taxpayer with a "Computation of Income Based on Specific Items." At the trial, the government abandoned one of the specific items of income listed in the computation and, in effect, attempted to substitute other items of income in its stead.

Since the taxpayer bears the burden of proof on the issue of appropriateness of amount,

§ 7429(g)(2), and his only notice of how that amount was arrived at is in the required written statement, the government should not be permitted to shift its grounds as to the basis of the amount assessed, at least not on the date of the trial without any prior notice to the taxpayer.

**4.** The government relies on the anti-injunction provision of the Code, § 7421, in support of this proposition. However, § 7421 expressly excepts proceedings under § 7429(b) from its prohibition.

**5.** This valuation is based on open market trades on securities exchanges and assumes these securities are marketable. This valuation is hereinafter referred to as "full value."

appropriate in amount only if receipt thereof by the taxpayers was not as mere pledgees and if it is proper to attribute "full value" to such stolen securities. This is, at best, highly doubtful. However, in making its order, the Court gave the benefit of the doubt to the government because the burden of proof as to appropriateness of amount was on the taxpayer. Thus, rather than arbitrarily reduce the portion of the assessment based on income attributable to stolen securities by, say, 50 or 75 or 90 percent, the Court chose to conditionally stay enforcement of the assessment.

The government seeks to collect the amount of the assessment attributable to the stolen securities from other assets of the taxpayers because they are, in essence, worthless, as far as the taxpayers are concerned. If they are worthless now, they were worthless when the assessments were made and, to that extent, the amounts assessed would have been inappropriate. Should circumstances change due to some unforeseeable development, then the government's interest is protected, because the assessments continue. The order entered here is similar in purpose and effect to equitable orders entered by other courts under § 7429(b)(3). *See DeLauri v. United States*, 492 F.Supp. 442, 446 (W.D.Tex. 1980); *Fidelity Equipment Leasing Corp. v. United States*, 462 F.Supp. 845, 851 (N.D. Ga.1978).

With respect to paragraph 3 of the Final Order, the government contends that the Court has placed in the taxpayers' hands "the means to perpetually forestall the lifting of the conditional stay," because under § 6851 a notice of deficiency cannot be sent until the taxpayer files a return and the taxpayers here may choose to not file returns. The simple answer is that the Court has reserved jurisdiction to "otherwise order" the lifting of the conditional stay and application therefor can be made by the government if it concludes that future circumstances so justify.

■ The government next asks that plaintiffs be required to give security under Rule 65(c), Fed.R.Civ.P., because the order

is, in effect, an injunction against the collection of taxes. The Court disagrees with the government's characterization of its order for the reason set forth above. However, even assuming that the government is correct, the order here involved does not come within the scope of Rule 65(c) because it is neither a temporary restraining order nor a preliminary injunction; rather, it is a final order issued on the merits insofar as this proceeding is concerned.

■ Finally, the government requests that paragraph 2 of the Final Order be stayed, pursuant to Rule 67, Fed.R.Civ.P., so that an appeal may be taken. The Ninth Circuit has recently confirmed that the clear words of § 7429(f) that district court orders are "final and conclusive and shall not be reviewed by any court," mean what they say and an appeal is precluded. *Nichols v. United States*, 633 F.2d 829 at 830 (9th Cir. 1980). Since appellate review is clearly precluded, consideration of a stay pending appeal would obviously be inappropriate.

For the foregoing reasons, the motions to alter, amend or vacate the Final Order herein, to require the giving of security and to stay the Final Order pending appeal are denied. Dated: February 12, 1981.

## APPENDIX

### FINAL ORDER

This summary proceeding pursuant to 26 U.S.C. § 7429(b) was tried on January 5, 1981, the parties appearing by their respective attorneys of record. At the conclusion of the trial, the Court made its oral determination of the issues herein, first, that the making of the termination assessments with respect to each taxpayer is reasonable under the circumstances and, second, that the amounts assessed are inappropriate under the circumstances. Pursuant to said determination,

IT IS ORDERED:

1. That the Secretary of the Treasury (the "Secretary") shall abate the assessment against each taxpayer in the amount of

$48,130.00, so that the termination assessment against plaintiff Krivacek is reduced to $468,070.65 and the termination assessment against plaintiff Goldstein is reduced to $472,245.65.

2. Pursuant to Section 7429(b)(3), authorizing the Court to order the Secretary "to take such other action as the court finds appropriate," that the Secretary shall, in enforcing or collecting the termination assessment with respect to any amount in excess of $30,370.00, as to each taxpayer, levy only against the securities out of which the termination assessment arose.

3. Unless otherwise ordered by the Court, the conditional stay of levy set forth in paragraph 2 above shall remain in effect only until the earlier of (i) any notice of deficiency for each respective taxpayer's full taxable year becomes final; or (ii) a timely petition is filed with the Tax Court for a redetermination of such deficiency.