Lester **BARRY**, Jr.

v.

**UNITED STATES of America.**

**Civ. A. No. 82–0326.**

United States District Court,
E. D. Pennsylvania.

Feb. 18, 1982.

Thomas W. Ostrander, Philadelphia, Pa., for plaintiff.

Dawn M. MacPhee, Asst. U. S. Atty., Philadelphia, Pa., and Will E. McLeod, Atty., Tax Division, Dept. of Justice, Washington, D. C., for government.

## MEMORANDUM

LUONGO, District Judge.

On or before November 20, 1981, Reuben H. Saideman, Acting District Director of Internal Revenue for Philadelphia, made a termination assessment of federal income tax liability against plaintiff, Lester Barry, Jr., pursuant to 26 U.S.C. § 6851(a)(1).[1] Plaintiff has exhausted his administrative remedies and now brings this civil action pursuant to 26 U.S.C. § 7429 seeking judicial review and abatement of the termination assessment.

As gleaned from the pleadings, affidavits, exhibits and testimony submitted by the parties, the relevant facts are as follows. Barry lives with his wife and children at 7701 Queen Street, Wyndmoor, Pennsylvania. (*See* Government Exhibit 9.) On November 13, 1981, Trooper Walter C. Gibbon of the Pennsylvania State Police, having information that Barry was engaged in illegal gambling operations, secured a search warrant for the Barry home and two vehi-

---

1. "§ 6851. Termination assessments of income tax

   (a) Authority for making.—

   (1) In general.—If the Secretary finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act (including in the case of a corporation distributing all or a part of its assets in liquidation or otherwise) tending to prejudice or to render wholly or partially ineffectual proceedings to collect the income tax for the current or the immediately preceding taxable year unless such proceeding be brought without delay, the Secretary shall immediately make a determination of tax for the current taxable year or for the preceding taxable year, or both, as the case may be, and notwithstanding any other provision of law, such tax shall become immediately due and payable. The Secretary shall immediately assess the amount of the tax so determined (together with all interest, additional amounts, and additions to the tax provided by law) for the current taxable year or such preceding taxable year, or both, as the case may be, and shall cause notice of such determination and assessment to be given the taxpayer, together with a demand for immediate payment of such tax."

cles which allegedly belong to Barry. (Government Exhibit 1.) The search was executed the following day by officers of the Pennsylvania State Police. The police inventory form, (Government Exhibit 3), discloses that the police found and seized, *inter alia*, significant amounts of gambling paraphernalia, $1,171 in cash, and a quantity of precious metals valued at $76,000 by the State Police. (*See* Schmidt affidavit ¶ 7.) As a result of this search plaintiff was charged with operating an illegal lottery in violation of Pa.Cons.Stat.Ann. tit. 18 § 5512 and engaging in pool selling and bookmaking in violation of Pa.Cons.Stat.Ann. tit. 18 § 5514.

Sometime after the search occurred the Pennsylvania State Police notified Internal Revenue Service Special Agent John P. Cooper of the fruits of the search and furnished to him copies of the gambling records which the State Police had seized. (Cooper Affidavit ¶ 4.) Cooper, who has been employed by IRS as a special agent for twelve and one-half years, and who has conducted gambling investigations for IRS in the past, concluded, after analysis of the records, that Barry was a banker in an illegal gambling operation from a period beginning in 1979. As explained in Cooper's affidavit, which was not contradicted in any manner, a banker "is the person who controls the illegal wagering operation. He makes all pay-outs, pays commissions owed to numbers writers, and is literally the owner-operator of the business." (Cooper Affidavit ¶ 5.)

Revenue Agent Harry J. Schmidt was assigned the task of conducting an examination to determine whether the circumstances surrounding Barry's tax liability for 1981 warranted a termination assessment. Schmidt was given all of the information regarding the search of Barry's home, including the inventory of property seized. (*See* Schmidt Affidavit ¶¶ 3–9.) He had discussions with officers of the Pennsylvania State Police regarding the records and

the circumstances of the search. Schmidt, with Cooper's aid, analyzed the gambling records (Government Exhibits 4–6) seized from Barry's home and concluded that Barry's net income from gambling for 1979 was $21,909. He also calculated that Barry's net profit from gambling in 1980 was $172,-809, and $167,004 in 1981. (Schmidt Affidavit ¶ 15; Government Exhibit 7.) [2] Schmidt reviewed computer summaries of Barry's 1980 tax return which showed an adjusted gross income of $22,640, none of which was attributed to gambling activities. (Government Exhibit 9.) Schmidt further determined that, although Barry had earned $167,004 from gambling in 1981, Barry had not filed an estimated tax return. From his analysis of the records, Schmidt concluded that Barry's tax liability for January 1, 1981 to November 14, 1981 was $101,082.34. In addition to determining Barry's income attributable to gambling and Barry's prior tax status, Schmidt had an agent check the records located at Montgomery County courthouse to determine whether there was any property in Barry's name. This check failed to disclose any assets owned by Barry and further disclosed that the Barry residence is held by Barry's wife in an irrevocable trust for their children. Schmidt also checked motor vehicle registration records at the Pennsylvania Department of Transportation. Initially, this search failed to disclose that any vehicles were registered in Barry's name but, at some point thereafter, Schmidt learned that Barry owned a Cadillac.

After reviewing all of the aforementioned material, Schmidt concluded that "the circumstances were such that they tended to prejudice or render wholly or partially ineffectual normal proceedings to collect the outstanding income tax due and thereby warranted a termination assessment." (Schmidt Affidavit ¶ 23.)

On November 20, 1981, Acting District Director Reuben H. Saideman, pursuant to 26 U.S.C. § 6851, notified Barry by mail:

---

**2.** Schmidt arrived at these figures by totalling the gross receipts for a particular year and assigned 27% of that total as Barry's net profit. (Schmidt Affidavit ¶ 17.) Plaintiff has not submitted any evidence suggesting that Schmidt's calculation of his net profit from gambling activities was unreasonable.

[Y]ou appear by the nature of your wagering activities, to be designing quickly to place your property beyond the reach of the Government, either by transferring or dissipating it, thereby tending to prejudice or render ineffectual collection of income tax for the current taxable year. Accordingly, the income tax, as set forth below, is due and payable immediately.

| Taxable Year | Tax |
|---|---|
| January 1, 1981 to November 14, 1981 | $101,082.34 |

(Government Exhibit 8.) Enclosed with Saideman's letter were IRS forms which disclosed that Barry's tax liability was assessed on the basis of the seized gambling records and further detailed how the amount of tax was determined.

Judicial review of the termination assessment is pursuant to 26 U.S.C. § 7429(b) which provides:

> ... the district court shall determine whether or not—
>
> (A) the making of the assessment under section 6851, 6861, or 6862, as the case may be, is reasonable under the circumstances, and
>
> (B) the amount so assessed or demanded as a result of the action taken under section 6851, 6861, or 6862, is appropriate under the circumstances.
>
> (3) Order of district court.—If the court determines that the making of such assessment is unreasonable or that the amount assessed or demanded is inappropriate, the court may order the Secretary to abate such assessment, to redetermine (in whole or in part) the amount assessed or demanded, or to take such other action as the court finds appropriate.

In challenging the termination assessment, plaintiff raises four distinct arguments. He contends that (1) the termination assessment was invalid because it was not personally approved by the District Director; (2) the notice of the termination assessment was insufficient under 26 U.S.C. § 7429(a)(1); (3) the making of the assessment was unreasonable under the circumstances; and (4) the amount assessed was not appropriate under the circumstances. I will consider each of these issues in order.

### I. *Approval by the District Director*

The District Director for the Internal Revenue Service for Philadelphia is James T. Rideoutte. On November 19, 1981, the day before the notice of termination assessment was issued to Barry, Rideoutte, intending to be absent from the office, in a memo to file, designated Reuben H. Saideman, Assistant District Director, as Acting District Director. (Government Exhibit 10.) In addition to this formal designation, IRS procedures provide that, upon the absence of the District Director, the Assistant District Director automatically becomes Acting District Director. *See* IRS Delegation Order No. 12, June 13, 1980 at ¶ 10 (Government Exhibit 11.) As above noted, Saideman, in his capacity as Acting District Director, issued the termination assessment notice.

Although 26 U.S.C. § 6851 authorizes only the Secretary of the Treasury to make termination assessments, Barry concedes that that authority has been effectively delegated to the District Director. *See* Treas. Reg. § 1.6851–1(a). Barry argues, however, that this delegation of authority can go no further than the District Director, and that Saideman, as Acting District Director, was powerless to issue the termination assessment. In support of this contention he points to Revenue Procedure 78–12 which provides, in pertinent part:

> [A]ll jeopardy assessments, ... and all termination assessments must be *personally* approved by the District Director
> ....

Rev.Proc. 78–12, 1978–1 C.B. 590, § 2.03 (emphasis in original).

I reject Barry's argument that the language "personally approved by the District Director" found in Rev.Proc. 78–12 means that the only individual who can issue a termination assessment is the person who holds the title District Director. As plaintiff's counsel conceded at the hearing, such an interpretation leads to the conclusion that, unless the Secretary of Treasury himself issues the assessment, IRS is powerless to make termination assessments when

the named District Director is, for example, either ill or on vacation. It was Congress' clear intent in enacting the termination assessment provision of § 6851 to provide the Secretary with an expeditious procedure to protect the government's right to collect tax by attaching assets which are threatened with immediate dissipation or concealment. The interpretation advanced by Barry would completely frustrate that purpose.

In my view the reasonable interpretation of Rev.Proc. 78–12 is that it requires that the person performing the duties of the office of District Director must issue termination assessments, and it simply prevents that person from further delegating to his or her underlings the authority to issue termination assessments while he or she is available.

■ On the day the termination assessment was issued in the instant case, Reuben H. Saideman, as Acting District Director, was performing all of the duties of the office of District Director and as such he personally issued the assessment. Accordingly, I reject Barry's argument that the termination assessment was invalid.

## II. Sufficiency of the Notice

26 U.S.C. § 7429(a)(1) provides:

Within 5 days after the day on which an assessment is made under § 6851(a), the Secretary shall provide the taxpayer with a written statement of the information upon which the Secretary relies in making such assessment.

Barry contends that the notice dated November 20, 1981, was insufficient as a matter of law and that he is, accordingly, entitled to have the assessment set aside.

■ The purpose of § 7429(a)(1) is "to alert the taxpayer to any basis for contesting the assessment." *Loretto v. United States,* 440 F.Supp. 1168, 1175 (E.D.Pa. 1977). After a careful review of the November 20, 1981 notice and materials enclosed therein, I conclude that, in light of the purpose of the notice requirement, the government satisfied its burden to notify plaintiff of the information on which it relied in making the assessment.

■ As set forth earlier, the service stated in its notice that it concluded that Barry was designing to place his property beyond the reach of the government because of the nature of his wagering activities. If this bare conclusion were the only information provided, I might be inclined to agree with Barry that the notice was insufficient. *See, e.g., DeLauri v. United States,* 492 F.Supp. 442, 444 (W.D.Texas 1980); *Fidelity Equipment Leasing Corp. v. United States,* 462 F.Supp. 845, 848 (N.D.Ga.1978). But Barry, in his written submissions, failed to disclose that the service had provided him with a number of enclosures which informed him that the tax was assessed on the basis of his gambling records. These enclosures further explained how the data was analyzed to come up with the tax. In my view, the letter and enclosures were sufficient to alert Barry as to the information the service was relying on in making its termination assessment. The notice was not insufficient.

## III. Reasonableness of the Assessment

■ 26 U.S.C. § 7429(b)(2)(A) requires the district court to determine whether or not the "making of the assessment . . . is reasonable under the circumstances." The government has the burden of establishing the reasonableness of the making of the assessment. 26 U.S.C. § 7429(g)(1); *Loretto v. United States, supra,* 440 F.Supp. at 1172. As I stated in *Loretto,* " 'reasonable under the circumstances' means something more than 'not arbitrary or capricious,' and something less than 'supported by substantial evidence.' " *Id.* In reaching its decision on the reasonableness of the assessment, the court is to give IRS's administrative determination of reasonableness no deference whatsoever. *Id.*

■ In the instant case I conclude that the service has met its burden of proof as to the reasonableness of the assessment. From the information available to the service, it is reasonable to conclude that Barry was earning substantial income from illegal gambling activities and, in light of his prior

tax returns, that he was not reporting this income to IRS. Further, it appears that Barry was converting significant sums of money into precious metals which are easily concealed and are not readily subject to attachment for the purposes of securing payment of tax liability. In addition, Barry had effectively placed his real property beyond the reach of attachment by having his residence held by his wife in an irrevocable trust for their children. Finally, with the exception of an automobile, a search of the public records revealed no other property which would secure the government's ability to obtain payment of the tax.

From these facts the service could reasonably conclude that Barry was either concealing or dissipating the assets earned through gambling with the effect that the service would be prejudiced in collecting income tax on those assets. Because § 6851(a)(1) by its terms authorizes a termination assessment on the basis of such a finding, the assessment in the instant case was "reasonable under the circumstances."

IV. *The Appropriateness of the Amount of the Assessment*

Under § 7429(g)(2) the taxpayer has the burden to establish that the amount of the assessment was not appropriate under the circumstances. As set forth in note 2, *supra,* at the hearing Barry did not introduce any evidence contradicting the service's calculation of his tax liability which was based on an analysis of the wagering records. Accordingly, he has not met his burden of proof on this issue.

In summary, I conclude that the fact that the Acting District Director approved the termination assessment does not invalidate the proceedings; that the service satisfied the notice requirement of § 7429(a)(1); that the service has met its burden of establishing that the termination assessment is "reasonable under the circumstances"; and that plaintiff has not met his burden of establishing that the amount assessed is inappropriate. Accordingly, judgment will be entered denying the relief requested by plaintiff.