**Don E. WALKER, Plaintiff,**

v.

**UNITED STATES of America, Defendant. (Two Cases)**

Nos. Civ. 3–86–480, Civ. 3–86–481.

United States District Court,
E.D. Tennessee, N.D.

Jan. 5, 1987.

Ralph E. Harwell, Randall E. Nichols, Knoxville, Tenn., for plaintiff.

John W. Gill, U.S. Atty., Knoxville, Tenn., Paul M. Predmore, Asst. U.S. Atty., Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## MEMORANDUM

JARVIS, District Judge.

These are consolidated actions in which plaintiff taxpayer seeks judicial review to determine the reasonableness and appropriateness of two jeopardy assessments, one under § 6861 of the *Internal Revenue Code of 1954* (26 U.S.C.) [the "Code"] for unpaid income taxes for 1982, 1983 and 1984 and the other under § 6862 of the Code for unpaid excise taxes for 1984 and 1985. Jurisdiction is invoked pursuant to § 7429(b) of the Code and is not in dispute.

In particular, these jeopardy assessments were made by the District Director ["Director"] of the Internal Revenue Service ["IRS"] pursuant to §§ 6861 and 6862 of the Code. Section 6861(a) states in part:

If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof.

Section 6862(a) states in part:

If the Secretary or his delegate believes that the collection of any tax (other than income tax, estate tax, and gift tax) under any provision of the internal revenue laws will be jeopardized by delay, he shall, whether or not the time otherwise prescribed by law for making return and paying such tax has expired, immediately assess such tax (together with all interest, additional amounts, and additions to the tax provided for by law). Such tax, additions to the tax, and interest shall thereupon become immediately due and payable, and immediate notice and demand shall be made by the Secretary or his delegate for the payment thereof.

By letters dated April 18, 1986, plaintiff was notified by the Director of the amount of the assessments and his right to administrative and judicial review. [Doc. 1, Exhs. A].

A hearing on this matter was held before the Court on October 17, 1986, in which the Court heard testimony and accepted exhibits pertaining to the issues presented.[1] At the conclusion of the hearing, the Court

---

**1.** The time within which the Court was to have made its determination was extended upon motion [*see* Docs. 2] of plaintiff on July 16, 1986, and by Order [*see* Docs. 3] entered on July 21, 1986, whereby the case was continued for a period not exceeding 40 days from the date of the Order pursuant to 26 U.S.C. § 7429(b)(2) (Supp) 1986. However, this matter was further continued by agreement of the parties and the Court to a later hearing date so that the parties could review the tax records involved and could attempt to completely settle this matter.

allowed the parties to file post-trial briefs, which the Court has now considered.

In challenging the jeopardy assessments, plaintiff raises the following arguments: (1) the notices of the jeopardy assessments were insufficient under 26 U.S.C. § 7429(a)(1); (2) the IRS should be estopped from enforcing its tax lien against the real property in question because plaintiff's counsel had an agreement with the Government that this real property would not be seized; and (3) the making of the jeopardy assessments was unreasonable and the amount was inappropriate under the circumstances. Pursuant to Rule 52(a), Fed.R.Civ.P., the Court hereby makes the following findings of fact and conclusions of law.

Section 7429(a)(1) (Supp.1986) of the Code provides:

> Within 5 days after the day on which an assessment is made under section 6851(a), 6861(a), or 6862, the Secretary shall provide the taxpayer with a written statement of the information upon which the Secretary relies in making such assessment.

Plaintiff contends that the notices dated April 18, 1986 [*see* Docs. 1, Exs. A] were insufficient as a matter of law and that, accordingly, he is entitled to have the jeopardy assessment set aside.

In an attempt to comply with § 7429(a)(1), one of the notices included the following language:

> Under Section 6861 of the Internal Revenue Code, you are notified that I have found you to be designing to place your property beyond the reach of the United States Government by concealing and dissipating or transferring to others your property thereby tending to prejudice or render ineffectual collection of income tax for the periods ending December 31, 1982, December 31, 1983, and December 31, 1984. Accordingly, based on information available at this time, I have approved assessment of tax and additional

amounts determined to be due as reflected in the attached computations:[2] [*See* Doc. 1, Ex. A in Civil Action 3–86–480].

In response, the Government contends: (1) this is the first time plaintiff has maintained that the Government failed to comply with the notice requirement; (2) assuming, *arguendo*, that the Government has failed to comply with the notice requirements of the Code, plaintiff has now been informed of the information relied upon by the Government and, thus, any deficiency in the notice issued by the Government is now immaterial; and (3) the three decisions upon which plaintiff relies as authority for the argument that the notice is inadequate all acknowledge that the adequacy of the notice required by the Code is not to be tested solely by the letter which is required five days after the jeopardy assessment is approved. The Court will address each issue *seriatim*.

The Government maintains that plaintiff raised the issue of insufficiency of notice for the first time the day before the hearing, implying that plaintiff should be estopped from raising the defense now or perhaps that he has waived his right to do so. In response, plaintiff contends that he initially contested the adequacy of the notice of May 13, 1986, in his correspondence to the Director in which he specifically addressed § 7429(a)(1) and stated the following:

> This requirement cannot be met simply by a computation schedule. Such a schedule does not provide taxpayer with information on which the IRS is relying. Without such information, it is not possible to specifically refute the computation. [Doc. 1, Ex. B, p. 3].

Certainly, the Court agrees with plaintiff that the above language clearly indicated to the IRS that the taxpayer would be contesting whether or not the amount of the assessment was appropriate

**2.** In Civil Action 3–86–481, the notice contained identical language except that it referred to Section 6862 of the Code and discussed collection of wagering tax and occupational wagering tax. [*See* Doc. 1, Ex. A].

since the taxpayer has not been provided with the information required in § 7429(a)(1). However, the Court finds that taxpayer's correspondence to the director contains other language which is at the very least equally important in notifying the IRS that the taxpayer would be contesting whether or not the notice supplied the information so that the taxpayer could determine whether the *making* of the assessment was reasonable. Although the taxpayer did not couch this potential deficiency in the IRS's notice as clearly as he did regarding the *amount* of assessment, the following language was included in the taxpayer's response to the IRS's notice:

> The burden of proof is on the IRS to show that the making of a jeopardy assessment was reasonable under the circumstances. Reg. 301.6861–1 provides that a jeopardy assessment is justified if one of three criteria described in Reg. 1.6851–1(a)(1) are met. The conditions that must be met are:
>
> > (i) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself.
> >
> > (ii) The taxpayer is or appears to be designing quickly to place his, her or its property beyond the reach of the Government, either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons.
> >
> > (iii) The taxpayer's financial solvency is or appears to be in peril.
>
> It is taxpayer's contention that none of the three criteria are met in this situation and that the making of a jeopardy assessment by the District Director was completely arbitrary and capricious.

[Doc. 1, Ex. B, p. 2].

Accordingly, the Court finds that the Government did have notice that plaintiff would be contesting the sufficiency of the notice as early as May 13, 1986, and the Government's argument to the contrary is totally without merit.

The Government's second and third responses to plaintiff's position on the issue of notice are intertwined. The Government maintains that assuming, *arguendo*, the notice is technically insufficient, the Court should, nevertheless, deem this procedural deficiency as immaterial since plaintiff was aware of the information upon which the Government would base its jeopardy assessment before and/or after the jeopardy assessment was made. In support of this proposition, the Government then cites the same three district court cases on which plaintiff also relies. However, before discussing the three cases cited by the parties herein, a brief review of the background in the area of assessment procedures is necessary.

■ The Code contains provisions for the special assessment of taxes when circumstances exist which would make doubtful the collection of certain tax liabilities. *See Marranca v. United States*, 587 F.Supp. 663, 664 (M.D.Penn.1984). There are two separate types of these special assessments, one of which is a jeopardy assessment under either § 6861 or § 6862 of the Code and the other a termination assessment under § 6851 of the Code. *See id.* A jeopardy assessment is made for a tax year that has ended and for which the due date of filing a return has passed; a termination assessment is made for a tax year that either has not ended or for which the due date for filing a tax return has not yet passed. *See id.* In the instant case, the Court is confronted with jeopardy assessments because the assessment has been made for tax years that have ended.

Under normal tax assessment procedures, there is generally a considerable lapse of time between the first notice of tax deficiency and the actual enforced collection of the tax. *See id.*, at 665. Accordingly, the taxpayer who wishes to contest a proposed assessment has various administrative remedies as well as a judicial remedy in the tax court. *See id.* More importantly, all of this is accomplished without the actual collection of the tax claimed. *See id.* However, when the IRS deter-

mines that the collection of tax may be in jeopardy, the Code provides that it may forego the usual procedures and immediately assess and collect the tax claimed, as in the instant case. *See id.*

Prior to the enactment of the Tax Reform Act of 1976, there was no immediate avenue for judicial review of jeopardy assessments which were available to taxpayers. *See id.* However, the Tax Reform Act of 1976 provided for both administrative and judicial review of jeopardy tax assessments. *See id.* The Code provides that the IRS shall follow certain procedures at this point, one of which is a letter which the Secretary shall provide the taxpayer setting forth "a written statement of the information upon which the Secretary relies in making such assessment." 26 U.S.C. § 7429(a)(1) (Supp.1986); *see Marranca*, 587 F.Supp. at 665. The taxpayer then has approximately 30 days for administrative review and, after the administrative review, then the taxpayer is entitled to bring an action under § 7429 for the purpose of obtaining a limited judicial review of the administrative taxing procedures, which is precisely what the taxpayer has done in the instant case. *See* 26 U.S.C. § 7429(a) and (b) (Supp.1986).

■ Under § 7429(b)(2), the district court is limited to a determination of whether or not: (1) the making of the assessment under the appropriate section of the Code is reasonable under the circumstances; and (2) the amount so assessed or demanded as a result of the action taken under the Code is appropriate under the circumstances. 26 U.S.C. § 7429(b)(2) (Supp.1986). If it is determined that the assessment was unreasonable or that its amount was inappropriate, the Court may order the assessment abated, remand the matter for redetermination of the amount assessed, or take such other action as may be appropriate. *Id.*, § 7429(b)(3); *see Marranca*, 587 F.Supp. at 665. Moreover, any determination by a district court under this section is final and conclusive and is not subject to review by any other court. *See*

26 U.S.C. § 7429(f) (Supp.1986); *see Marranca*, 587 F.Supp. at 665.

■ In determining whether or not the making of an assessment is "reasonable under the circumstances," the burden of proof on this issue is upon the IRS. *See Marranca*, 587 F.Supp. at 666. In determining whether or not the amount of the assessment is "appropriate under the circumstances," the burden of proof is upon the taxpayer, although the Secretary must provide a written statement which contains a description of the information he used in arriving at the assessment. *See id.*

It is also clear from the legislative history of the Act that the district court is to make a *de novo* determination in considering the reasonableness of the assessment and the appropriateness of the amount assessed. *See Loretto v. United States*, 440 F.Supp. 1168, 1171 (E.D.Pa.1977). What is reasonable under the circumstances means "something more than 'not arbitrary or capricious,' and something less than 'supported by substantial evidence.'" *Id.* at 1172.

Against this procedural background involving the jeopardy assessment statute, the parties herein rely on the same three district court cases in support of their respective positions concerning the sufficiency of the notice from the Director to the taxpayer pursuant to § 7429(a)(1) of the Code. In short, plaintiff cites these district court cases because the judges therein criticize the language used in the notice for various reasons; however, the IRS relies on these cases because, even though the language of the notice may have been criticized, the court nevertheless upheld the assessment made by the IRS.

In *Fidelity Equipment Leasing Corporation v. United States*, 462 F.Supp. 845 (N.D.Ga.1978), the following language in the notice from the IRS was employed:

Under § 6861 of the Internal Revenue Code, you are notified that I have found you to be designing quickly to place your property beyond the reach of the Government either by removing it from the United States, by concealing it, by trans-

ferring it to other persons, or by dissipating it, thereby tending to prejudice or render ineffectual collection of income tax for the taxable years ended as shown below. Accordingly, based on the information available at this time, I have approved assessment of tax and additional amounts determined to be due as reflected in the attached computations:

*Id.* at 848. The Court then commented on the adequacy of this notice as follows:

The plaintiff correctly argues that such conclusionary statements do not fulfill the requirements of the statute. The Government should have informed the plaintiff of the information which led to these conclusions, rather than merely the conclusions.

*Id.* Thus, in the instant case, plaintiff taxpayer also asserts that the "conclusionary statements do not fulfill the requirements of the statute."

Nevertheless, the Court in *Fidelity Equipment Leasing Corporation* then held that the "Government's failure to satisfy the notice requirement of § 7429 will not serve to invalidate these proceedings ..." because the taxpayers have been informed of the information relief upon by the Government through the process of discovery and, thus, any deficiency in the notice issued by the Government is now "immaterial" so that the plaintiffs were not "prejudiced". *Id.*

The next district court case upon which the parties rely is *DeLauri v. United States,* 492 F.Supp. 442 (W.D.Tx.1980), in which the notice in that case included the following language:

Under § 6861 of the Internal Revenue (sic), you are notified that I have found you appear to be designing quickly to place property beyond the reach of the Government by dissipating it, or by transferring it to other persons; thereby, tending to render ineffectual collection of income tax for the periods ending December 31, 1973, December 31, 1974, and December 31, 1975. Accordingly, based on information available at this time, I have approved assessment of tax and

additional amounts to be due as reflected in the attached computations: ...

*Id.* at 444. The *DeLauri* court then discussed the fact that the language set forth above was almost identical to the language used in *Fidelity Equipment Leasing Corporation* and agreed with the *Fidelity* court's conclusion that the notice provided taxpayer with "mere conclusions" and not the information on which the conclusions were based. *Id.* However, the *DeLauri* court also agreed with the conclusion in *Fidelity Equipment Leasing Corporation* because later discovery provided the necessary information and also because the plaintiff never received the "inadequate notice" and therefore could not have been prejudiced. *Id.* The *DeLauri* court did, however, issue the following warning to the IRS:

However, the Government must not continue to flout the clear requirements of the statute. The *factual* basis upon which the IRS relies in choosing to impose a jeopardy assessment must be included in the written statement to the taxpayer. Statutory provisions cannot be ignored by the very agency whose duty it is to enforce those statutes. Should inadequate notice be given in a future case, the proceedings will be abated, and the furnishing of an adequate written statement will be required.

*Id.* at 444–45.

The third case upon which the parties herein rely is *Hohman v. United States,* 535 F.Supp. 1218 (D.C.1982), in which that court described the following statement as "woefully insufficient":

I have found you to be designing quickly to place your assets beyond the reach of the Government by concealing them and/or transferring them to other persons or by dissipating them, thereby tending to prejudice or render ineffectual collection of income tax for the period ended December 31, 1980. Accordingly, based on information available at this time, I have approved assessment of tax and additional amounts determined to be

due as reflected in the attached computations.

*Id.* at 1222. Again, the Court found that the notice simply contained a conclusion and furnished no information which led the Director to the conclusion. *Id.* Nevertheless, the Court did not abate the proceedings, but again allowed taxpayers to limited discovery so that they would be able to obtain that information. *Id.*

Although not cited by any of the parties herein, independent research has also located another case, *Barry v. United States*, 534 F.Supp. 304 (E.D.Pa.1982), in which the court was again confronted with a notice which contained language almost identical to that set forth in the three cases previously mentioned. The *Barry* court concluded that the notice would be insufficient if that notice contained the only information upon which the Government based its assessment. *Id.* at 308. However, the Court then went on to find that the taxpayer had failed to disclose to the Court the fact that the IRS had provided him with enclosures which informed him that the tax was assessed on the basis of his gambling records. Moreover, those enclosures further explained how the data was analyzed to arrive at the tax. The Court then held that, based on this additional information, the notice was sufficient. *Id.*

In order for the Court to apply the principles of the above cases to the facts of this case, a brief summary of other facts of the case *sub judice* is necessary. It is undisputed that plaintiff taxpayer derived substantial income from gambling activities and the sale and distribution of controlled substances. As a result, plaintiff entered into a plea agreement on February 25, 1986, with the Assistant United States Attorney James R. Dedrick. [Trial Ex. 8]. In particular, that plea agreement provided that plaintiff would plead to a one-count violation of 21 U.S.C. § 848 and further permitted the Government to seize certain specific assets. The plea agreement also provided in pertinent part:

2. Mr. Walker will plead guilty by information in the Eastern District of Tennessee to felony income tax violations brought and documented by the Internal Revenue Service for the past six (6) years (the period of the statute of limitations) for any violation of Title 26, United States Code. Mr. Walker will assist and cooperate with representatives of the Internal Revenue Service for the purpose of:

(a) Determining (by taxable period) the total net income derived by Mr. Walker as a result of Mr. Walker's activities which resulted in this plea agreement;

(b) Filing correct federal income tax returns, if due;

(c) Amending existing returns on file to include the net income determined in Item a;

(d) Paying all taxes determined to be due and owing pursuant to Internal Revenue civil tax regulations. Mr. Walker will agree to the release of all tax-related information to the Internal Revenue Service pursuant to this agreement for the purpose of complying with the provisions of this paragraph.

[*Id.*, p. 2]. The parties further agreed that the taxpayer would receive a five-year sentence for each violation of the felony income tax law and that each five-year sentence would be served as concurrently as possible with any sentence imposed in the lead case. [*Id.*, pp. 2–3]. Finally, the taxpayer agreed to cooperate fully with federal authorities in "any matter as to which his cooperation may be relevant or requested." [*Id.*, p. 3].

Immediately prior to the presentation of the plea agreement to this Court, the testimony at the hearing established that the taxpayer's attorneys, Randy Nichols and, presumably, Ralph Harwell, met with Mr. Dedrick, in the presence of Agent Hendon of the Federal Bureau of Investigation ["FBI"] in which the parties went through all of taxpayer's assets for the purpose of determining which items the Government would seize and which they would not. One primary reason for this procedure was to determine which of these assets would be used to pay his attorneys. As a result

of that meeting, the testimony clearly established that taxpayer's real property in Broward County, Florida would be utilized to pay his attorney fees as well as to provide for taxpayer's wife while he was incarcerated. Additionally, the parties discussed the fact that the taxpayer's house in Knoxville, Tennessee, which he and his wife shared, would have to be sold whereby she would move into a smaller house so that she would have funds from which to support herself and their children while he was incarcerated. The declaration of Mr. Dedrick supports, in part, Walker's position that the Government would not seize the property in Florida as the Government could not establish that that property was acquired by the taxpayer with cash or other property that arose from the sale of illegal drugs. [*See* Trial Exh. 16, p. 2].

It is also important to note that no party to the plea agreement discussed or contemplated seizure or levy of any kind upon these assets by anyone, including the IRS. Of course, the testimony at the hearing also indicated that there was no agreement that the IRS would not seize the assets—this matter was simply not discussed.[3]

After the plea agreement was entered, it is undisputed that the taxpayer was interviewed repeatedly by federal agents. It is also undisputed that on March 2, 1986, the taxpayer attempted suicide by firing a single shot into his chest at close range. As a result, the taxpayer was hospitalized in critical condition. Three days after his hospitalization, the taxpayer was visited by federal agents at the hospital and was in contact with them until March 17, 1986, when he was placed under arrest.

After his arrest, the taxpayer was incarcerated at Talladega, Alabama because all parties believed that he would receive the best possible medical attention at that facility. While there, taxpayer was interviewed by IRS agents on April 3, 1986. [*See* Trial Exh. 1]. Three IRS agents interviewed the

taxpayer for approximately seven hours and, during the course of that conversation, he admitted that he owned a condominium in Florida which would be sold to pay his attorney fees. [*Id.*] When IRS agents returned the following day to complete their interview of the taxpayer, the agents were advised taxpayer had been transferred to Birmingham, Alabama in critical condition because of a relapse from his previous suicide attempt. [*Id.*] Thus, the IRS agents were unable to complete the interview.

On April 11, 1986, the taxpayer's attorneys forwarded a deed of trust to an attorney in Florida to perfect their attorneys' lien on the property which had been previously described to the IRS. [*See* Trial Exh. 15]. On April 24, 1986, the IRS filed two jeopardy assessments against the taxpayer, placing a tax lien upon the Florida condominium prior to the time the attorneys' deed of trust was actually recorded, which occurred on May 9, 1986. [*See* Trial Ex. 10].

The taxpayer remained incarcerated until June 30, 1986, when he was released on bond. On August 5, 1986, the taxpayer was sentenced to 15 years incarceration and reported to Lexington, Kentucky to begin the service of his sentence on August 11, 1986. [*See* Trial Exs. 6, 7].

As a result of the above undisputed facts or matters proven at the hearing, the taxpayer argues that the making of the jeopardy assessments was unreasonable because it was initiated after he had agreed to cooperate fully with the Government, agreed to enter pleas of guilty to felony tax offenses, agreed to describe and disclose his assets and holdings to agents of the IRS, agreed to file amended returns, and had advised the United States Attorney's Office and the IRS that he intended to make provisions for his wife and to pay his attorneys fees from the proceeds of the sale of his house in Knoxville and his con-

---

**3.** The declaration of James R. Dedrick also indicates that even if this matter had been discussed, Mr. Dedrick did not have any authority to make any representations or agreements con-

cerning civil income tax liabilities without prior consultation with the Justice Department. [Trial Exh. 16, pp. 2–3].

dominium in Florida. Accordingly, the taxpayer maintains that the IRS acted in an unreasonable manner by making the jeopardy assessments since both the FBI and the IRS had been constantly advised as to the location of all of his property and as to how he was planning to dispose of his remaining property after the Government, *i.e.*, the U.S. Attorney's Office, had seized the portion the parties had agreed upon. Because of his cooperation and disclosures, the taxpayer quite understandably argues that he was completely surprised by the making of the jeopardy assessments since it would appear that the IRS must have acquired additional information from some other source concerning the taxpayer's disposition of his assets. Therefore, the taxpayer contends that the jeopardy assessments were unreasonable both because the IRS failed to provide him with this information and because there were no new factual developments which would have warranted the taking of his property. In sum, the taxpayer argues that the IRS has not followed due process requirements set forth for his protection in the Code.

The Court agrees. Section 7429(a)(1) clearly requires the IRS to provide the taxpayer with a "written statement of the information upon which the Secretary relies in *making* such assessment." (emphasis added). In this case, as in the other cases relied on by the parties herein, the IRS simply notified the taxpayer of the Director's conclusion. His notice was completely bare of any information upon which the Director relied in making the determination that a jeopardy assessment was necessary. The taxpayer in the instant case was indeed deprived of his property by the IRS without due process. All of the notices employed by the IRS in this case and in the cases relied on by the parties are couched in precisely the same manner. Thus, the Court finds that the IRS has continued to "flout" its own requirements, perhaps because no district court has ever abated similar proceedings. This Court, however, will not allow the IRS to ignore its own statutes.

Moreover, the facts of the instant case demand the Court's conclusion that the jeopardy assessments must be abated. In this case, the IRS neglected to provide the information required in a situation in which the evidence indicates that the taxpayer was fully cooperating with all investigating agencies of the Government, *i.e.*, the IRS and the FBI, as he was required to do in his plea agreement. The evidence further indicates that the taxpayer had been candid and forthright with the investigating agents of the FBI and IRS up to the time the IRS made the jeopardy assessments. The taxpayer had disclosed all of his assets and had advised agents precisely how he was going to dispose of those assets. Finally, at the time the jeopardy assessments were made, the taxpayer was recuperating from a suicide attempt which left him in a questionable mental and physical state as far as his ability to dissipate assets was concerned. Thus, the Court finds that the jeopardy assessments in the instant case were unreasonable.

Order accordingly.

### ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that the jeopardy assessments entered against the plaintiff in the above matters be, and the same hereby are, ABATED, the Court specifically finding that the making of the jeopardy assessments was unreasonable under the circumstances. 26 U.S.C. § 7429(b)(2)(A).