John BERKERY

v.

UNITED STATES of America.

Civ. A. No. 82–862.

United States District Court,
E. D. Pennsylvania.

April 22, 1982.

Thomas W. Ostrander, Philadelphia, Pa.,
for plaintiff.

Will E. McLeod, Atty., Tax Div., Dept. of
Justice, Washington, D. C., for U. S.

OPINION

LUONGO, Chief Judge.

On or before December 14, 1981, James T. Rideoutte, District Director of Internal Revenue for Philadelphia, made a termination assessment of federal income tax liability against plaintiff, John Berkery, pursuant to 26 U.S.C. § 6851(a)(1).[1] Plaintiff now brings this civil action pursuant to 26 U.S.C. § 7429 seeking judicial review and abatement of the termination assessment.

As gleaned from the pleadings, affidavits and testimony submitted by the parties,[2] the relevant facts are as follows. On December 11, 1981 Berkery was stopped by United States Customs officials in Baltimore, Maryland. Berkery had two passports in his possession. The first, a United States passport issued to John Berkery, revealed that Berkery had been admitted to England on December 7, 1981. (Government Exhibit 1). The second was an Ireland passport issued to John Carlyle, which is an alias used by Berkery (see Government Exhibit 10).[3] The Ireland passport revealed that Berkery entered Bermuda on December 10, 1981. In addition to the passports, Berkery also had in his possession records of five bank accounts held in foreign countries. Three of the accounts were with Allied Irish Bank Limited in Dublin, Ireland, and the other two were with Barclays Bank Limited, a British bank. Two of the accounts held with Allied Irish Bank were issued to K. Jane Horan, Avonmore Mews, Seafield Road, Killiney County, Dublin. (Government Exhibits 4 and 6). The third Allied Irish Bank account was issued to John Carlyle, Esquire of the same address (Government Exhibit 5). Both of the accounts with Barclays were issued to Mrs. K. J. Horan, 40 Clarges Mews, London (Government Exhibits 7 and 8). K. Jane Horan is the name previously used by Berkery's wife, Kathleen Berkery. (Affidavit of Harry J. Schmidt, ¶ 10). Although it was not known to IRS at the time it made the termination assessment, on two occasions a person purporting to be John Carlyle directed the New York Branch of Allied Irish Banks Limited to transmit funds "by way of mail payment (bank draft) from New York to an account at a branch bank of the

1. § 6851(a)(1) provides:

Termination assessments of income tax
(a) Authority for making.—
(1) In general.—If the Secretary finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act (including in the case of a corporation distributing all or a part of its assets in liquidation or otherwise) tending to prejudice or to render wholly or partially ineffectual proceedings to collect the income tax for the current or the immediately preceding taxable year unless such proceeding be brought without delay, the Secretary shall immediately make a determination of tax for the current taxable year or for the preceding taxable year, or both, as the case may be, and notwithstanding any other provision of law, such tax shall become immediately due and payable. The Secretary shall immediately assess the amount of the tax so determined (together with all interest, additional amounts, and additions to the tax provided by law) for the current taxable year or such preceding taxable year, or both, as the case may be, and shall cause notice of such determination and assessment to be given the taxpayer, together with a demand for immediate payment of such tax.

2. On March 12, 1982 a hearing was held pursuant to the expedited review provisions of 26 U.S.C. § 7429(b)(1). The government, even though the defendant, submitted its evidence first because it has the burden of proof of establishing that the "making of the assessment ... is reasonable under the circumstances." 26 U.S.C. § 7429(g)(1); *Loretto v. United States*, 440 F.Supp. 1168, 1170 (E.D.Pa.1977). At the request of plaintiff the hearing was continued for two weeks to afford plaintiff the opportunity to gather evidence to rebut the government's evidence and to meet plaintiff's burden of establishing that the amount assessed was not appropriate under the circumstances. 26 U.S.C. § 7429(g)(2). The hearing was never reconvened, however, because in a letter dated March 25, 1982, plaintiff's counsel informed the court that he had no evidence to submit to the court and that it was unnecessary to continue with the hearing. Although plaintiff did not submit any evidence he has, through counsel, submitted a memorandum of law to the court.

3. Berkery's middle name is Carlyle. (Government Exhibit 10). In an affidavit executed to obtain an Ireland passport, Berkery/Carlyle wrote that, although he was named John Carlyle Berkery at birth, he has used the name John Carlyle his entire adult life. (*Id.*)

Bank in the Republic of Ireland." (Government's Exhibit 19).

Customs officials also found that Berkery was carrying electric bills for the residence at Avonmore Mews in Dublin, and a number of other documents including certificates recording events in his family's history. Finally, Berkery was carrying a document acknowledging receipt from John Carlyle of Avonmore Mews in Dublin, of nine hundred and seventy-eight pounds and seventy-eight pence ($1,547.60) for the formation of three Panama corporations.

The Customs Service provided IRS with copies of the documents Berkery was carrying. Revenue Agent Harry J. Schmidt was assigned the task of conducting an examination to determine whether the circumstances surrounding Berkery's tax liability warranted a termination assessment. (Schmidt Affidavit, ¶ 2). Schmidt is the coordinator of the Special Enforcement Program of IRS in Philadelphia and, over the past one and one-half years, he has successfully completed over thirty-five jeopardy and termination assessments.

On analysis of the bank records Schmidt concluded that deposits totalling 50,160.31 pounds or $78,988.00 [4] were made into the accounts in 1981 and treated this sum as income to Berkery. In addition, Schmidt added to Berkery's income $3,810.00 which represented the cost of living expenditures as determined by the Bureau of Labor Statistics for a family of four. Schmidt concluded that Berkery's total income for 1981 was $82,808.00, and he calculated Berkery's tax liability for 1981 as $43,392.79.

Schmidt also reviewed Berkery's prior tax records and found that Berkery had not filed an estimated tax return for 1981. (Schmidt Affidavit, ¶ 24). In addition, he learned that, as of December 14, 1981, Berkery had outstanding federal income tax liabilities totalling $65,221.87 for tax years

1972, 1975 and 1980. (*Id.* ¶ 20). On review of Berkery's 1979 and 1980 tax returns, Schmidt found that in neither of these returns did Berkery list his profession. Further, in 1979 Berkery listed adjusted gross income of $21,176 and in 1980 he listed an adjusted gross income of $44,800. As Schmidt noted in his affidavit, however, these figures combined were less than the amount Schmidt calculated as Berkery's income for 1981. (*Id.* ¶ 23).

Schmidt also found that, other than the foreign bank accounts, no other real or personal assets could be traced to John Berkery. (*Id.* ¶ 25). On the basis of the facts stated above, Schmidt concluded that "the circumstances were such that they tended to prejudice or render wholly or partially ineffectual normal proceedings to collect the outstanding income tax due and thereby warranted a termination assessment." (*Id.* ¶ 25).

On December 14, 1981, District Director James T. Rideoutte informed Berkery by letter that

> Under section of 6851 of the Internal Revenue Code, you are notified that I have found you appear, by the nature of your activities, to be designing quickly to place your property beyond the reach of the Government, either by transferring or dissipating it, thereby tending to prejudice or render ineffectual collection of income tax for the current taxable year. Accordingly, the income tax, as set forth below, is due and payable immediately.
>
> | Taxable Year | Tax |
> |---|---|
> | January 1, 1981 to December 11, 1981 | $43,392.79 |
>
> Based on information available at this time, the tax reflected in the attached computations has been assessed.

(Exhibit A to Plaintiff's Complaint, Document No. 1). Enclosed with Rideoutte's letter were three IRS forms which disclosed

---

4. The worksheet on which Berkery's tax was calculated provides that an exchange rate of 1 pound = 1.574 dollars was used. The figure 1.574, however, is a rounded off sum and on redoing the calculations I find that the actual exchange rate used to calculate the tax was 1 pound = 1.5749 dollars. Berkery's counsel does not dispute that the exchange used was 1.5749 and, indeed, he used that figure himself to come up with an alternative tax which does not include as income the sums in the accounts issued to K. Jane Horan. (*See* Document 7, at 7).

on what basis and how Berkery's tax was assessed. (*Id.*) The letter and enclosed forms were personally served on Berkery's wife on December 14, 1981 at 11100 Dora Drive, Philadelphia, which is the last known address of John Berkery. (Affidavit of William Crawford, ¶ 2). On the same day the government filed with the Prothonotary of Philadelphia County a notice of federal tax lien in the amount of $44,454.20 (Exhibit B to Plaintiff's Complaint). Additionally, the government filed with Allied Irish Bank's New York office a Notice of Levy against all accounts held by Berkery. (*Id.* Exhibit C).[5] Berkery received notice of the assessment because, in a telephone conversation he had with Agent Schmidt on December 15, 1981, Berkery admitted that he owed the tax stated in the December 14 letter and that he wanted to meet with Schmidt to discuss how to make his tax return. The meeting never came about because on January 13, 1982 Berkery, along with 37 other individuals, was indicted by a federal grand jury on conspiracy and drug charges and a warrant issued for his arrest. Berkery is presently a fugitive from justice and his whereabouts are unknown. (Affidavit of Andrew Sloam, ¶¶ 2–3).

Although Berkery's attorney sought to invoke administrative procedures to review the termination assessment pursuant to 26 U.S.C. § 7429(a), no such review took place since Berkery's attorney did not attach a power of attorney with the protest letter he filed with the IRS appeals office. (Schmidt Affidavit, ¶ 28). IRS regulations prevent an attorney from practicing before it unless the client has executed a written declaration that the attorney is authorized to represent him. 31 C.F.R. § 10.3(a)

(1981). After failing to obtain administrative relief, Berkery's attorney brought this action challenging the termination assessment.[6]

Judicial review of the termination assessment is pursuant to 26 U.S.C. § 7429(b) which provides:

... the district court shall determine whether or not—

(A) the making of the assessment under section 6851, 6861, or 6862, as the case may be, is reasonable under the circumstances, and

(B) the amount so assessed or demanded as a result of the action taken under section 6851, 6861 or 6862, is appropriate under the circumstances.

(3) Order of district court.—If the court determines that the making of such assessment is unreasonable or that the amount assessed or demanded is inappropriate, the court may order the Secretary to abate such assessment, to redetermine (in whole or in part) the amount assessed or demanded, or to take such other action as the court finds appropriate.

In challenging the termination assessment, plaintiff raises three distinct arguments. He contends that (1) the notice of the termination assessment was insufficient under 26 U.S.C. § 7429(a)(1); (2) the making of the assessment was unreasonable under the circumstances; and (3) the amount assessed was not appropriate under the circumstances. I will consider each of these issues in order.

I. *Sufficiency of the Notice*

26 U.S.C. § 7429(a)(1) provides:

Within 5 days after the day on which an assessment is made under § 6851(a),

---

**5.** In the instant case Berkery has also moved for removal of the notice of levy on the ground that the government failed to comply with the notice requirements of 26 U.S.C. § 6831. Because this case is before me pursuant to the expedited review provisions of 26 U.S.C. § 7429(b)(1) the only issue properly before me is the reasonableness of the termination assessment. Accordingly, plaintiff's complaint for removal of the notice of levy will be dismissed without prejudice to his making the challenge in the proper proceedings.

**6.** I note preliminarily that this complaint is subject to dismissal for the simple reason that Berkery is presently a fugitive from justice. *See Arana v. United States Immigration and Naturalization Service*, 673 F.2d 75 (3d Cir., 1982). It is anomalous indeed for Berkery to request relief from this court at the same time that he is avoiding this court's processes. Because, however, the government has not sought dismissal on this ground, I will consider the matter on the merits.

the Secretary shall provide the taxpayer with a written statement of the information upon which the Secretary relies in making such assessment.

Berkery contends that the notice dated December 14, 1981, was insufficient as a matter of law and that he is, accordingly, entitled to have the assessment set aside.

The purpose of § 7429(a)(1) is to "alert the taxpayer to any basis for contesting the assessment." *Loretto v. United States, supra,* 440 F.Supp. at 1175. After a careful review of the materials provided Berkery on December 14, 1982, I conclude that the government satisfied the notice requirement.

■ As I recently pointed out in *Barry v. United States,* 534 F.Supp. 304 (E.D.Pa. 1982), if all that the IRS provided Berkery in the instant case was the letter announcing the termination assessment, I would be inclined to agree that insufficient notice was provided and that the termination assessment should be abated. *See, e.g., De-Lauri v. United States,* 492 F.Supp. 442, 444 (W.D.Texas 1980); *Fidelity Equipment Leasing Corporation v. United States,* 462 F.Supp. 845, 848 (N.D.Ga.1978). But here, as in *Barry,* the IRS provided Berkery with documents which clearly pointed out the principal information on which it relied in making the assessment, and further pointed out how the data in IRS's possession was analyzed to compute the tax. In my view, the letter and documents were sufficient to satisfy the statutory notice requirement and the termination assessment is not subject to abatement on that basis.

II. *Reasonableness of the Assessment*

■ 26 U.S.C. § 7429(b)(2)(A) requires the district court to determine whether or not the "making of the assessment ... is reasonable under the circumstances." The government has the burden of establishing the reasonableness of the making of the assessment. 26 U.S.C. § 7429(g)(1); *Loretto v. United States, supra,* 440 F.Supp. 1172. As I stated in *Loretto,* " 'reasonable under the circumstances' means something more than 'not arbitrary or capricious,' and some-

thing less than 'supported by substantial evidence.' " *Id.* In deciding whether the assessment is reasonable, the court is to give IRS's administrative determination of reasonableness no deference whatsoever. *Id.* However, it should also be pointed out that "the Court, in making its independent determinations, is to take into account not only information available to the Internal Revenue Service on the assessment date, but also any other information which bears on the issues before it." *Haskin v. United States,* 444 F.Supp. 299, 304 (C.D.Cal.1977). *See Loretto v. United States, supra,* 440 F.Supp. at 1173.

■ In the instant case I conclude that the Service has met its burden of proof as to the reasonableness of the making of the assessment. From both the information available to the Service at the time it acted and the information presently available to this court, it is reasonable to conclude that Berkery was earning substantial income which, in light of his prior tax returns, he was not reporting to IRS. Berkery's admission to Schmidt that he owed the assessed amount coupled with Berkery's failure to file an estimated tax return in 1981 strongly supports the Service's action in making the assessment. In addition, as gleaned from the affidavits and exhibits, Berkery was investing money in foreign corporations, maintained a residence in Ireland and possibly one in England, carried two passports one of which was under an assumed name and entered the United States under suspicious circumstances. Further, Berkery was carrying records of accounts with foreign banks and it was subsequently learned that he, or someone purporting to be him, had transferred sums from the United States to a number of those accounts. Finally, Berkery has no traceable assets in the United States and is currently a fugitive from justice who has been indicted in a major drug conspiracy.

From these facts it could be reasonably concluded that Berkery had income that he was not reporting and he was either concealing or dissipating that income with the effect that the Service would be preju-

diced in collecting income tax. Because § 6851(a)(1) by its terms authorizes a termination assessment on the basis of such a finding, the assessment in the instant case "was reasonable under the circumstances."

### III. *The Appropriateness of the Amount of the Assessment*

Under 26 U.S.C. § 7429(g)(2) the taxpayer has the burden to establish that the amount of the assessment was not appropriate under the circumstances. As set forth in note 2, *supra*, Berkery presented no evidence regarding the amount assessed. Nevertheless, he argues that the Service's calculation of his income on the basis of bank accounts in the name of K. Jane Horan was improper. Essentially, it is plaintiff's contention that under the circumstances of the instant case, before the taxpayer must go forward and establish that the amount assessed was inappropriate the government must show that there is some basis for treating the amount assessed as income to the taxpayer.

 Accepting arguendo Berkery's contention that the government must initially establish a nexus between the bank accounts and him before he is required to establish that the amount assessed was inappropriate[7] that nexus is present here. Agent Schmidt testified that Berkery admitted that he owed the amount stated in the notice of assessment. This testimony, coupled with Berkery's possession of the bankbooks and the fact that a man purporting to be John Carlyle transferred sums from New York to the Ireland accounts, provided sufficient nexus between Berkery and the accounts to require Berkery to go forward with evidence to establish that the Service's treatment of the sums in those accounts as income to Berkery was inappropriate. Since Berkery submitted no such evidence, he has failed to meet his burden of establishing that the amount assessed was inappropriate under the circumstances.

7. I should point out that I disagree with Berkery's legal contention. The statute is abundantly clear that so long as the government meets its burden of establishing that the making of the termination assessment was reasonable, which it did in this case, the taxpayer has the burden to establish that the amount assessed was inappropriate. *Loretto v. United States, supra.*

In summary, I conclude that the Service satisfied the notice requirement of § 7429(a)(1); that the Service has met its burden of establishing that the termination assessment is "reasonable under the circumstances;" and that plaintiff has not met his burden of establishing that the amount assessed is inappropriate. Accordingly, judgment will be entered denying the relief requested by plaintiff.