**Ronald HIRSCHHORN, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

No. 87 Civ. 2350 (CSH).

United States District Court,
S.D. New York.

June 17, 1987.

Gerald B. Lefcourt, P.C., New York City, for plaintiff; Gary G. Becker, of counsel.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City, for defendant; Cynthia Keefe Dunne, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is an action challenging a termination assessment made by the Internal Revenue Service ("IRS") against plaintiff Ronald Hirschhorn. Defendant United States of America (hereafter the "Government") moves "for an Order dismissing the complaint", without specifying the rule or statute upon which the motion is predicated. *See* Local Civil Rule 3(d). Because the parties have supplied affidavits and exhibits in support of and in opposition to the present motion, I treat it as one brought pursuant to F.R.Civ.P. 56. Jurisdiction is based on 26 U.S.C. § 7429(b).

*Background*

On November 19, 1986, approximately $134,752.00 was seized from plaintiff by agents of the Drug Enforcement Agency acting in concert with investigators from the Manhattan District Attorney's Office. At the time of the seizure, plaintiff was a passenger in an automobile parked in front of a Citibank branch office. Immediately prior to the seizure, plaintiff had been observed counting what appeared to be $100 bills from a briefcase. Upon investigation, the agents determined that the automobile contained several small glass vials with traces of a white powdery substance and a hard rubber "blackjack". The occupants of the car were placed under arrest by the New York State officials, charged with drug offenses. The money seized from plaintiff was turned over to the Drug Enforcement Agency for possible civil forfeiture under federal narcotics laws.

Plaintiff has submitted an affidavit from the driver of the automobile, Bruce Gordon, who avers that the glass vials belonged to him, and that plaintiff had no knowledge of their presence in the automobile. In addition, plaintiff has submitted an affidavit from Joseph Lango, the owner of the automobile (who was not present at the time of the arrest), who avers that he owned the blackjack found in the car.

The state criminal charges against plaintiff arising from the arrest have been adjourned in contemplation of dismissal. Nevertheless, the money seized from plaintiff is currently subject to a forfeiture proceeding before this Court. *United States of America v. $134,752.00*, 87 Civ. 1884 (CSH).

Prior to the filling of the forfeiture action, plaintiff's attorney met with the Assistant U.S. Attorney (A.U.S.A.) handling the case to attempt to dissuade her from seeking civil forfeiture of the money. The substance of the conversation between these two attorneys is disputed by the participants. The Government claims that plaintiff's attorney stated that the money seized was the proceeds of a $65,000 wager on a football game placed with a bookmaker. The plaintiff claims that his attorney merely informed the government that the money was not drug related, and that it may have been related to plaintiff's compulsive, but legal, gambling activities. The possibility of a large wager on a football game was mentioned, plaintiff claims, merely as a hypothetical example.

The meeting just described took place on December 9, 1986. At an undisclosed date "in early December" a revenue agent of the IRS was advised by the D.E.A. of the November 19, 1986 seizure of $134,752.00 from plaintiff. The revenue agent was informed, by the D.E.A. agent and by an investigator from the Manhattan District Attorney's Office, that plaintiff had made several "inconsistent statements" regarding the source of the money at the time of his arrest.[1] On December 10, 1986, the revenue agent received a phone call from the A.U.S.A. assigned to the forfeiture action regarding the December 9, 1986 meeting with plaintiff's attorney. The revenue agent was told that the money seized was derived from gambling activity.

The revenue agent received plaintiff's current address from the District Attorney's Office, and ran a computer check on whether plaintiff had filed any tax returns listing that address as his residence. No tax returns were identified by the computer check.

The revenue agent made two attempts to locate plaintiff by telephone at the number listed for the Hirschhorn residence. Both times he spoke with a man who identified himself as plaintiff's father, Charles Hirschhorn. Mr. Hirschhorn confirmed that plaintiff resided at that address, and stated that he did not know whether plaintiff was employed. He further stated that plaintiff traveled a great deal.

On January 13, 1987, the revenue agent spoke with plaintiff's attorney, who had advised plaintiff not to cooperate with the IRS investigation until they could determine its purpose. The agent, after obtaining permission from his superior, informed plaintiff's attorney of the specific information sought by the IRS, which included plaintiff's address, his social security number, his marital status, the identities of his children, if any, his place of employment, the location at which he had filed federal income tax returns, copies of his W-2 forms, copies of his federal income tax returns for 1984, 1985 and 1986 [2], and docu-

---

**1.** Specifically, the Government identifies the following statements attributed to Hirschhorn as inconsistent: (1) that he knew how much money was contained in the brief case and that he could account for every penny; (2) that he was about to deposit the money at the Citibank branch outside of which the arrest and seizure took place; (3) that the money came from Atlantic City; (4) that the money was destined for a charity event; and (5) that "the IRS would get [him] for sure". Whether the Government contends that these statements are inconsistent with each other or with plaintiff's position in the present proceeding is unclear.

**2.** According to the revenue agent's declaration, he requested a copy of plaintiff's 1986 federal income tax return on January 13, 1987. Declaration of Michael Fallik, dated April 29, 1987, ¶¶ 9, 10.

mentation regarding the source of the money seized.

On January 27, 1987 the agent again spoke with the plaintiff's attorney, seeking responses to the requests for information detailed in their previous conversation. The attorney indicated that answers would be supplied shortly.

By February 5, 1987, no responses were supplied to the IRS by either plaintiff or his attorney. In the absence of the requested information, the revenue agent recommended a termination assessment "to protect the government's interest." Decl. ¶ 13. On February 17, the District Director made the recommended termination assessment, and notified plaintiff thereof by letter dated February 18, 1987.

The District Director's letter indicated that the termination assessment was made because he had "found [plaintiff] to be placing [his] property beyond the reach of the Government either by concealing it, by dissipating it, or by transferring it to other persons." The letter further stated:

Specifically, information on hand indicates that your assets are derived from illegal activities which you conduct[ ] exclusively by the use of cash, and that you have not filed your tax returns for prior years, thereby tending to prejudice or render ineffectual collection of income tax for the period January 1, 1986 through November 19, 1986.

On April 1, 1987, a conference was held by an Appeals officer in the IRS Appeals Office with plaintiff's attorney to discuss the termination assessment. The substance of the conversation had at that conference is partially disputed by the participants. The most crucial dispute centers on the alleged production at the conference of plaintiff's past tax returns. Plaintiff's attorney claims that he produced copies of plaintiff's tax returns "for prior years", and that the Appeals officer said that he did not require copies. The Appeals officer claims that purported copies were produced, but that he was not permitted to copy them.

The parties do not contest the fact that documents purporting to be copies of plaintiff's prior tax returns were produced, and that the Appeals officer was permitted to examine them.

The District Director's assessment was sustained by the Appeals Office, and plaintiff was notified of that determination by letter dated April 7, 1987.

*Discussion*

The termination assessment at issue was made pursuant to 26 U.S.C. § 6851(a), which authorizes the IRS to make such assessments of income tax

[i]f the Secretary finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act ... tending to prejudice or to render wholly or partially ineffectual proceedings to collect the income tax for the current or immediately preceding taxable year unless such proceeding be brought without delay ...

26 U.S.C.A.. § 6851 (1987 Pocket Part)

This statute is one of two which authorizes the IRS to move quickly to collect taxes when circumstances exist which would make collection of the tax doubtful if less drastic methods were pursued. *See* 26 U.S.C. § 6861 and § 6862.[3] Prior to the Tax Reform Act of 1976, there was no immediate avenue for judicial review of these extraordinary assessments. The taxpayer was relegated to the post-collection remedy of a suit for a tax refund. The 1976 Act, however, provided for both administrative and judicial review of these types of assessments. 26 U.S.C. § 7429

The current Code requires the IRS to follow certain procedures upon making a determination of a termination or jeopardy assessment, including the provision of a

---

**3.** The difference between termination assessments pursuant to § 6851 and jeopardy assessments pursuant to § 6861 or § 6862 is that a termination assessment is made for a tax year that either has not ended or for which the due date for filing a tax return has not passed, while a jeopardy assessment is made for a tax year that has ended and for which the due date for filing a return has passed. *See Walker v. United States*, 650 F.Supp. 877, 880 (E.D.Tenn.1987).

"written statement of the information upon which the Secretary relies in making such assessment". 26 U.S.C. § 7429(a)(1). The taxpayer may seek administrative review of the assessment, and may thereafter bring a civil action against the United States for a summary determination of the validity of the assessment. 26 U.S.C. § 7429(b)

■ In a proceeding under 26 U.S.C. § 7429(b) to challenge a termination assessment, the IRS bears the burden of demonstrating that the imposition of the assessment is reasonable in the circumstances of the particular case. If the IRS makes the required showing of reasonableness, the burden shifts to the taxpayer to demonstrate that the amount of tax assessed is not appropriate. *Hecht v. United States,* 609 F.Supp. 264 (S.D.N.Y.1985); *Clarendon Ltd. v. United States,* 573 F.Supp. 106 (S.D.N.Y.1983).

The Court's task under § 7429 is limited to evaluating the reasonableness of the IRS assessment; the taxpayer's ultimate tax liability is not at issue. That question remains for future calculation.

The standard of review in this court of the "reasonableness" of the IRS assessment is broader than the "arbitrary and capricious" standard sometimes applied to review of administrative agency decisions but less sweeping than the "supported by substantial evidence" standard applied to other matters. *Clarendon Ltd. v. United States, supra; Hecht v. United States, supra,* 609 F.Supp. at 266, *Nolan v. United States,* 539 F.Supp. 788, 790 (D.C.Az.1982). This standard has been compared to "a preliminary examination for probable cause in a criminal proceeding." *United States v. Doyle,* 482 F.Supp. 1227 (E.D.Wi.1980).

Moreover, an evidentiary hearing is not required under § 7429. The issues may be resolved by the Court on the affidavits submitted. *Hecht v. United States, supra,* 609 F.Supp. at 266.

In the circumstances of this case, the question is whether the information obtained by the IRS could reasonably support the District Director's conclusions that "[plaintiff's] assets are derived from illegal activities which [plaintiff] conduct[s] exclusively by the use of cash, and that [plaintiff has] not filed ... tax returns for prior years, thereby tending to prejudice or render ineffectual collection of income tax for the period January 1, 1986 through November 19, 1986."

The Government argues that the assumed illegality of the plaintiff's activities is not important to the IRS' conclusion that a termination assessment was appropriate. I take this argument as a graceful concession that the evidence before the IRS was insufficient to support a conclusion that plaintiff was involved in illegal activities. While the IRS could reasonably conclude that plaintiff was probably a high stakes gambler, it could not ignore the simple fact that gambling has both legal and illegal manifestations.[4]

The IRS' conclusion that plaintiff's activities were cash based is supported chiefly by the fact that plaintiff was arrested with a large amount of cash, mainly in high denominations. The Government argues that plaintiff's failure to provide the IRS with information regarding any bank accounts he maintained also supports the conclusion that his activities were cash based. However, the IRS did not ask for this information until the conference at the Appeals Office with plaintiff's attorney, who merely informed the appeals officer that he had no knowledge of plaintiff's banking habits. No effort to receive additional information before sustaining the assessment was made.

I cannot find that the IRS' conclusion regarding plaintiff's supposed cash basis was reasonable on these facts. While the amount of cash seized is itself sufficient to cause any reasonable observer to wonder whether plaintiff maintained accounts for

---

4. The affidavit of Bruce Gordon, sworn to February 9, 1987, dispels any inference that plaintiff in this action had any knowledge of or other connection to the trace elements of cocaine found in the car at plaintiff's arrest. The Government does not rely on the cocaine to support the assessment.

his liquid assets in a manner consistent with law abiding activities, the conclusion that he does not cannot be reasonable without some pre-conclusion investigation. No investigation on this point was attempted prior to the assessment.

In addition, the location of the seizure (directly in front of a Citibank branch office), and some of plaintiff's statements made at the time of his arrest (including the statement that he was about to deposit the money at that Citibank branch) would support a suspicion that plaintiff maintained large balances in at least one Citibank account. While this suspicion would not itself reasonably support a conclusion on the point, it bears on the reasonableness of the opposite conclusion drawn, without investigation, by the IRS.

In contrast to the first two conclusions relied upon by the IRS, the conclusion that plaintiff did not file tax returns for previous years was reasonable when initially made by the District Director. The IRS had specifically requested plaintiff's social security number, his address, and the location at which he had filed federal income tax returns. Neither plaintiff nor his attorney responded to this request with information which would have allayed the reasonable suspicion of the IRS that plaintiff's cash based activities were not adequately reported. The only means of investigating absent this information apparently consisted of the previously described computer check of tax returns filed listing the address plaintiff supplied at the time of his arrest. As that check produced negative results, and as the IRS could not perform any further investigation without plaintiff's cooperation, the conclusion that plaintiff had not filed returns was reasonable.

■ Despite my conclusion that the IRS District Director's conclusions on the illegality of plaintiff's activities and the cash nature of those activities were unreasonable, I believe it was reasonable for him to make the assessment at issue. The fact that plaintiff was arrested with a large amount of cash, combined with the fact that plaintiff would not supply adequate information to allow the IRS to determine whether or not he had previously filed tax returns, and in light of the negative results of the only means of checking for tax returns available to the IRS without plaintiff's cooperation, together support the reasonableness of the District Director's action. The large amount of cash combined with the lack of previously filed tax returns supports the reasonable conclusion that plaintiff was concealing his income from the authorities.

■ The reasonableness of this conclusion, however, was dispelled by the conference at the Appeals office. At that conference, plaintiff's attorney displayed copies of what he claimed were plaintiff's tax returns for 1984 and 1985. From even a cursory examination of these documents, the appeals officer could have obtained information which would have assisted IRS in verifying their authenticity. All of the information requested of plaintiff by the revenue agent during his January 13, 1987 phone conversation with plaintiff's attorney was available from these documents, including plaintiff's social security number, his address, the number of dependent children, etc.

The dispute over whether plaintiff's attorney was willing to allow the appeals officer to photocopy these documents is irrelevant. The information necessary to allow the IRS to verify or disprove the purported prior tax returns was available in either case. The Government does not suggest that counsel simply waived the returns in front of the officer's nose without permitting the officer to read them or make notes of the contents.

The information available to the IRS at the Appeals conference directly bears on this Court's determination of the reasonableness of the assessment even though it was not available to the IRS at the time the assessment was made. This is so because, while the Court is to give no deference whatsoever to the administrative determination of reasonableness, "the Court, in making its independent determinations, is to take into account not only information available to the [IRS] on the assessment date, but also any other information which

bears on the issues before it." *Berkery v. United States*, 544 F.Supp. 1, 5 (E.D.Pa. 1982), quoting *Haskin v. United States*, 444 F.Supp. 299, 304 (C.D.Ca.1977).

It was unreasonable for the IRS to conclude, without investigation based on information available from the purported prior returns at the appeals conference, that plaintiff had not previously filed tax returns, a key factor in the original assessment. Absent a reasonable conclusion that plaintiff was a non-filer, the IRS could not reasonably conclude that plaintiff would conceal his income from the Government. Accordingly, the assessment, reasonable when initially made, lost that character at the time of the appeals conference, and has never regained it.[5]

The Government argues that the termination assessment should be regarded as reasonable based on conclusions that the IRS might have made based on the evidence before it. These conclusions, i.e. that plaintiff was attempting to conceal himself as well as his assets from the Government, were not mentioned in the notice sent by the IRS to plaintiff pursuant to § 7429. Even if these conclusions were reasonable, the IRS' failure to notify plaintiff of a termination assessment based on these conclusions would be fatal to that assessment. A taxpayer who receives insufficient notice of the assessment is entitled to an abatement. *See DeLauri v. United States*, 492 F.Supp. 442, 444 (W.D. Tx.1980); *Berkery v. United States, su-*

*pra*, 544 F.Supp. at 5.[6] I therefore decline to consider these grounds for supporting the assessment at issue.

*Conclusion*

The Government's motion to dismiss the complaint is denied in its entirety.[7] The termination assessment at issue will be abated.

Settle an order on five (5) days notice.

5. The Appeals officer says in his affidavit, ¶ 5, that at the conference plaintiff's attorney stated that plaintiff "does not have any checking or savings accounts", and disclaimed knowledge of any other "assets or property" of plaintiff. All the more reason for the IRS to have obtained plaintiff's social security number from the proffered tax returns and run a further check of 1099 forms, W–2 forms, and that sort of reporting documentation designed by the IRS to keep tabs on the taxpaying citizenry. A time comes when failure to conduct a reasonable investigatory follow-up renders an assessment unreasonable. This is such a time.

6. Plaintiff makes a convincing argument that the notice supplied by the IRS in this case was defective in any event, as it failed to contain "a written statement of the information upon which the Secretary relies in making" the assessment at issue. § 7429(a)(1). Although the Dis-

trict Director's February 18, 1987 letter refers to "factual" findings, i.e. that plaintiff's activities were illegal and cash based, the notice does not specify which facts these "findings" are based upon. I do not rely on this ground for my determination in this case because, in the peculiar circumstances of this case, plaintiff was not prejudiced by this failure. Plaintiff and his attorney were well aware of the facts the IRS had at their disposal, and in fact were able to effectively rebut the only factual conclusion which I have found to be reasonable when made, i.e. that regarding plaintiff's previous history of filing tax returns.

7. The Government requested an extension of time within which to file reply papers on the present motion. Because the request was not opposed, I granted the request. No reply papers have been timely filed.