**Ronald HIRSCHHORN, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. 87 Civ. 2350 (CSH).**

United States District Court,
S.D. New York.

May 16, 1988.

Gerald B. Lefcourt, P.C., New York City, for plaintiff; Gary G. Becker, of counsel.

Rudolph W. Giuliani, U.S. Atty., for the S.D. New York, New York City, for defendant; Cynthia Keefe Dunne, of counsel.

**MEMORANDUM OPINION
AND ORDER**

HAIGHT, District Judge:

On March 4, 1988 a hearing was held in the captioned action to determine:

"... whether or not [IRS Appeals Officer] Socha was able to acquire sufficient detail at ... [an IRS appeals conference with plaintiff's counsel] for the IRS to ascertain 'that plaintiff [had or] had not previously filed tax returns....'"

Memorandum Opinion and Order dated February 9, 1988, slip op. at 2, quoting Memorandum Opinion and Order dated June 17, 1987, 662 F.Supp. 887, 891.

■ I considered this issue crucial for reasons explained in the prior opinions in this action. Briefly stated, the information made available to the IRS at the Appeals conference would determine whether the IRS' failure to abate the termination assessment at issue was reasonable. The termination assessment was reasonable when made only on the ground that plaintiff had not previously filed income tax returns, *see* Memorandum Opinion and Order dated June 17, 1987, 662 F.Supp. at 891, yet plaintiff claimed that copies of his tax returns were made available for inspection at the Appeals conference. The extent to which those tax returns were made available for inspection developed as a hotly disputed issue capable of resolution only at a hearing where credibility determinations could be made.

Both parties agreed that the government bore the burden of proof at the hearing. The government's first and only witness was Joseph F. Socha, the IRS Appeals Officer who presided at the conference. Mr. Socha testified that plaintiff's attorney, Gary G. Becker, produced purported tax returns but would not permit them to be photocopied. Socha described his opportunity to review the documents in these terms:

A: He held copies of two tax returns before me and he showed them to me. He held them in his left hand and I took them with my right hand, and with the forefinger of his right hand he pointed out the occupation was miscellaneous.

He then turned the page and showed me on the second page indicating wagering with a sum of money next to it. At that point I requested permission to make photocopies. He said, "No, you may not," and he pulled them out of my hand and I never saw the details again on those returns.

Q: How long did you have the tax returns in your hands?

A: The length of time he told me to look here, look there, couldn't have been more than 15 seconds, I would say, maximum 30 seconds.

Q: During that time period did Mr. Becker keep his hands on the documents also?

A: Yes, he held it in his hands.

Tr. at 19.

Despite his inability to photocopy the purported tax returns, however, Socha was convinced the tax returns were genuine. This fact was revealed during cross-examination, when Socha testified as follows:

Q: In other words, you did not believe that these tax returns that you were being shown were unauthentic, you believed them to be tax returns of the taxpayer, correct?

A: Correct.

Q: And so the notice which said to the taxpayer that one of the reasons we are making this termination assessment is for your failure to file tax returns, you now resolved that issue in favor of the taxpayer, correct?

A: Correct.

Tr. at 41.

Socha's interest in making photocopies of the tax returns was based on a commendable desire to create a fully documented case file rather than on an institutional interest in establishing whether or not plaintiff had actually filed tax returns in previous years. Accordingly, he testified:

Q: Mr. Socha, if you had copies of the tax returns that you asked for, according to your direct testimony, would it have mattered anyway?

A: No.

Q: You would have affirmed [the termination assessment] anyhow?

A: Correct.

Q: So this whole issue of the tax returns is a meaningless one to you, Mr. Socha?

A: Yes.

Tr. at 44.

Socha affirmed the termination assessment because he believed that information conveyed to him at the Appeals conference, in addition to information already known to him about the amount of cash seized from plaintiff and the circumstances of the seizure, justified the IRS' action. Tr. at 44–45. In short, Socha's affirmance of the termination assessment was based on a statement made by Becker to the effect that plaintiff had no checking account, no savings account, and no other assets.[1] This lack of normal financial management tools, combined with the size of the cash seizure and attendant circumstances convinced Socha that the government's ability to collect plaintiff's taxes was in jeopardy.

The only ground contained in the IRS' notice to plaintiff of the termination assessment that was reasonable when made was the IRS' conclusion that plaintiff was a non-filer of income tax returns. In my view, therefore, only this ground could have sustained the termination assessment at issue. Socha's unequivocal testimony concerning his satisfaction with the genuineness of the purported returns is decisive on the point. The IRS' reasonable conclusion that plaintiff was a non-filer was unequivocally rendered unreasonable by information conveyed to the IRS at the conference.

The government contends that I should consider information presented to the IRS Appeals Officer at the conference to reassess the reasonableness of at least one other ground arguably contained in the notice to the taxpayer. That ground—the IRS' conclusion that the taxpayer was operating a cash business—was unreasonable when initially reached, but was purportedly confirmed by Becker at the conference.

---

1. Becker denies having made this statement.

I have characterized the initial notice sent to the taxpayer as identifying either two or three grounds for the termination assessment. *See* Memorandum Opinion and Order dated September 30, 1987, slip op. at 2, n. 1; Tr. at 68. The notice sent to plaintiff was in the form of a letter from the District Director which stated his conclusions that "[plaintiff's] assets are derived from illegal activities which [plaintiff] conduct[s] exclusively by the use of cash, and that [plaintiff has] not filed ... tax returns for prior years, thereby tending to prejudice or render ineffectual collection of income tax for the period January 1, 1986 through November 19, 1986."

On reflection, I think the more accurate characterization is that the notice contains only two grounds for the termination assessment. The cash basis of plaintiff's business is referred to merely to underscore the "illegal business" ground relied upon by the District Director. A reasonable taxpayer considering the Director's letter would not, in my view, be on notice that the assessment was issued because the IRS was not aware of any bank accounts in his name.

Socha's testimony regarding Becker's declaration that plaintiff had no bank accounts is therefore irrelevant. The question the government urges me to consider —i.e. whether information presented at an appeals conference which supports an otherwise unreasonable conclusion contained in the assessment notice to the taxpayer should render that conclusion "reasonable" for purposes of the district court's review —does not arise in this case. If Becker had conceded that his client's business activities were illegal, I would reach the question. Under these circumstances, however, I do not.

*Conclusion*

The March 4, 1988 hearing conclusively established that the only reasonable conclusion relied upon by the District Director in his notice to plaintiff of the termination assessment at issue was rendered unreasonable as a result of information conveyed to the IRS at the appeals conference. Accordingly, the termination assessment will be abated.

Settle order on five (5) days notice within fifteen (15) days of the date of this Memorandum Opinion and Order.